## STATE ex rel. SOUTTER vs. THE COMMON COUNCIL of the CITY OF MADISON.

The provision in the charter of the city of Madison requiring that when a judgment shall be rendered against the city, "the same shall be levied and collected as other city or ward charges," imposes it as a specific duty upon the common council to levy and collect a tax to pay any valid judgment against the city; and the fact that an execution might issue on the judgment, if not paid within a specified time, does not make the duty less specific or binding.

This court awards a *mandamus* to compel the common council of the city of Madison to levy and collect a tax for the payment of a judgment rendered against the city in the court of the *United States* for the district of Wisconsin.

A statement by the common council in their return to an alternative *mandamus*, that they have no *knowledge* of the judgment mentioned in the writ sufficient to form a belief, and therefore deny the same, is not sufficient. The denial should be of any *knowledge or information* sufficient to form a belief.

A return by the common council stating that taxes were levied in the years 1857 and '8, to pay the interest on the city bonds for which, in part, the judgment was rendered; that about two-thirds only of those taxes were paid, and for the residue the property chargeable therewith was sold and purchased by the county; that the county is indebted to the city on account of said taxes to an amount greater than the judgment; that it has transferred to the city certificates for the property so sold to an amount larger than the judgment, which the city still holds; that many of the tax payers, owing an aggregate sum greater than the judgment, have refused to pay the taxes of 1857, and have obtained injunctions restraining the sale of their property by suits which are still pending, and that the respondents have no power to re-levy said tax, shows no excuse for not levying and collecting the amount of the relator's judgment when requested by him to do so.

The duty of the common council is continuing, and does not cease with the levying of one tax which is in part uncollected. It ends only when the whole money is collected and the debt is actually paid.

If the mayor and part of the common council go out of office after the alternative writ is served, their duties in the premises devolve on their successors, and the peremptory writ may be directed to and enforced upon the mayor and common council generally.

Where the charter of a city, at the time of the issue and sale of its bonds, made it the duty of the common council, when any judgment should be rendered against the city, to levy and collect the amount like other city or ward charges, and declared that private property within the city should not be taken

on execution to pay any city debt, a subsequent act of the legislature prohibiting the city from levying such a tax as would be necessary to discharge a judgment rendered against it for interest on said bonds, would deprive the creditor of the only efficient means of collecting his debt, and would be repugnant to the constitution.

January Term, 1862.

SOUTTER
v.
THE CITY OF MADISON.

APPLICATION for a *mandamus*, to compel the common council of the city of Madison to levy and collect a tax for the payment of a judgment recovered by the relator against the city in the United States court for the district of Wisconsin. An alternative writ was issued, which the defendant moved to quash.

*J. C. Hopkins*, for the motion, argued that a *mandamus* should not be issued where there is another remedy, and that it did not yet appear that an execution would not be effectual; that the charter did not specifically require the common council to levy the tax (2 Hill, 45); that if it was a corporate duty, an action on the case would lie for its non-performance; and that the court has no power to grant a *mandamus* to enforce the payment of a judgment of a court of the United States, which stands upon the same footing as a judgment in another state. 5 East, 473; 12 John., 99; 17 id., 272; 3 Paige, 207; 6 Wheat., 398; 4 Cranch, 179; 7 id., 279; 5 id., 115; 10 Wheat., 1.

*S. U. Pinney*, contra.

*By the Court*, PAINE, J. This was an application for a writ of *mandamus*, to compel the common council of Madison to levy a tax for the purpose of paying a judgment which the relator has recovered against the city in the District Court of the United States for the district of Wisconsin. The counsel for the city moved to quash the alternative writ. No question was made as to the validity of the judgment, and disposing of the case upon the questions raised, we can see no good reason for granting the motion.

The use of the writ of *mandamus* to compel corporate authorities to levy a tax, the levying of which is a specific duty imposed upon them by law, and in respect to which they have no discretion to exercise, is well established, and indeed was not questioned. *Commonwealth vs. Councils of Pitts-*

Dec. 11, 1861.

*burg*, 34 Penn. St. Rep., 509. In an amendment to the charter of the city, found as chap. 119, Pr. Laws, 1856, it is provided that whenever a judgment is recovered against the city, " the same shall be levied and collected as other city or ward charges," &c. This imposes it as a specific duty on the common council to levy and collect a tax to pay any valid judgment against the city, and the fact that if this is not done within a specified time execution may issue, does not make the duty any the less specific or binding. Why then should they not be compelled by *mandamus* to perform this duty? Simply, it is said, because the judgment is that of a United States court instead of a state court. And in support of this position several cases were cited to the effect that the state courts consider the judgments of the United States courts as standing on the same footing with judgments of the courts of other states. And the case of *Tarbell vs. Griggs*, 3 Paige, 207, was also relied on, in which it was held that a creditor's bill would not be entertained in a state court, in aid of a judgment recovered in a federal court in the same state, on which an execution had been returned unsatisfied. But it will be observed that even in that case, the chancellor intimated that he might have retained the case upon the suggestion of any sufficient equitable ground for it. He said: " This court, upon the principle of comity, has gone so far as to compel a discovery from persons residing in its jurisdiction, in aid of the prosecution or defense of a suit pending in the court of a sister state. And I am not prepared to say it might not, upon the same principle of comity, interfere to aid the parties in the collection of a judgment of a court of the United States or of a sister state, upon any sufficient grounds of equity appearing upon the face of the bill, to show that the exercise of such a jurisdiction was necessary to prevent a failure of justice." And on the other hand it was held in *Wilkinson et al. vs. Yale et al.*, 6 McLean, 16, that the federal courts would entertain a creditor's bill founded on a state court judgment, and intimated that the state courts could properly do the same with respect to federal judgments. Which of these two cases has the better reason, we do not deem it necessary to decide. For even though

the case in Paige be correct, we do not think it would sus-
tain the conclusion that a state court should not issue a *man-*
*damus* to compel a state officer to perform a specific duty
imposed on him by a state law, merely because the right
sought to be protected originated in the judgment of a Uni-
ted States court. Suppose a register refuses to record a
patent issued by the United States, or the clerk to file a trans-
cript of a judgment of the United States court, should a
state court refuse to issue a *mandamus* to compel them, on
the ground that the party had acquired the right which he
was seeking to protect, from the United States government
in some of its departments? Such a plea would seem to
us unworthy of a moment's consideration. And we cannot
see that it ought to have any more force as applied to the
question presented here.

If the federal court had jurisdiction in a suit against the
city and could render a valid judgment against it, then it
must be assumed that the law imposed on the council the
duty of collecting a tax to pay such a judgment as well as
any other. And whenever the state itself imposes on its
own officers specific duties in respect to judgments, that is a
good reason why the state courts should compel a perform-
ance of those duties. It does not become the court to be
more scrupulous in respect to enforcing a performance of the
duty, than the state was in creating that duty in the first
place.

For these reasons we think the motion to quash must be
overruled, with costs.

The defendant afterwards filed a return to the alternative
writ, to which the relator demurred. The facts stated in the
return appear sufficiently from the opinion of the court sus-
taining the demurer. The demurrer was argued by *S. U.*
*Pinney* for the relator, and by *J. C. Hopkins* for the city.

*By the Court,* DIXON, C. J. The denial that judgments        March 15.
were recovered as stated in the relation, is altogether defect-
ive. The return is, that the respondents have "no *knowledge*
thereof sufficient to form a belief, and therefore they deny

the same." They may, nevertheless, have such *information* upon the subject as would preclude them from denying the existence of the judgments, or questioning their validity. The statute requires a denial of "any knowledge or information thereof sufficient to form a belief." R. S., chap. 125, sec. 111; *Hastings vs. Gwynn*, 12 Wis., 671.

The excuses for not levying and collecting the amount of the judgments when requested by the relator—as that taxes were levied in the years 1857 and 1858 to pay the interest for which the judgments were in part recovered—that about two-thirds only of the taxes were paid, and for the residue the property chargeable therewith was returned delinquent to the treasurer of the county of Dane, and by him sold, and purchased by the county—that the county hitherto has been and now is indebted to the city on account of said taxes in a sum greatly exceeding the amount of the judgments—that it transferred to the city, in part payment thereof, a large number of certificates for the land so sold, which the city now holds and which exceed in amount the sum due upon the judgments—that many of the tax payers, owing in the aggregate about $5,000, have refused to pay the taxes of 1857, and instituted suits to restrain, and have restrained the sale of their property, which suits are still pending and undetermined—that by reason of the unpaid taxes and tax certificates on hand, the levy of another tax to pay the interest is unnecessary—that it would be oppressive and unjust to compel the taxable inhabitants who have already contributed their full proportion, to pay again—and that the respondents have no power to re-levy the same—are clearly no answer in law to this application. The financial embarrassments of the city, the disordered state of its revenues and the inconvertibility of its property, constitute no valid reason why the process of the law should not go against it to enforce the payment of debts lawfully incurred. They are circumstances of no greater weight than in the case of a private individual, for whom such a defense was never imagined. They may perplex and annoy in the case of either; but they can never justify any attempt at repudiating the obligation of contracts, which, in my judgment, would be

January Term, 1862.

SOUTTER
v.
THE CITY OF MADISON.

the substantial effect of sustaining the return. Neither is it any excuse that taxes were once levied to pay the interest, and in part collected. The interest has not been paid. Since that time these judgments have been recovered. Upon their recovery the law imposed a new obligation on the respondents to levy and collect the amount and pay it over to the relator. Priv. Laws of 1856, chap. 119. It is a poor answer to his claims to say that they levied and collected a part of the money due to him at the time prescribed by the law and the contract, but did not pay it, and therefore the city should now be relieved from the payment of anything. Nor is it of any importance in a legal point of view, that many of the citizens have contributed their full proportions of the money which should have been applied in payment of these debts, whilst others have refused, it matters not whether rightfully or wrongfully. It seems oppressive, and is, in some respects, no doubt, a great hardship, that those who are diligent and prompt in the discharge of their obligations to the public, should be compelled to suffer on account of the delinquencies of others, occasioned sometimes by the mistakes of the officers of the law, or, it may be, of the legislature, but more frequently the fault of the delinquents themselves. It is an evil inseparable from every system of taxation, a subject always difficult and never free from vices and imperfections —a misfortune which must ever attend those who dwell in communities where any are unwilling to bear their just share of the public burdens. In such affairs, the tax-payers are, as it were, sureties for one another. What one gains by accident or fraud, the other must lose. No deductions are ever made from the public revenues for such causes. The deficiencies of one year must be made up the next, and diverted funds restored. If these inequalities, often inevitable, were to constitute an excuse for the non-payment of taxes, public faith would be at an end, and government must cease. Who doubts, for instance, that under our present law, rigid and impartial as the legislature have endeavored to make it, great injustice is frequently done? That some are charged beyond their due proportion, whilst very many fall far short of it? So long as men suppress truth, and make false and

corrupt statements of the amount and value of their property, and so long as mistakes occur, so long these things will continue. But the remedy does not consist in a refusal to pay all taxes. The evils, so far as possible, are to be obviated by the rigid enforcement of the law, the punishment of those who transgress its provisions, and the election of faithful and competent officers. Clearly such grievances, however perplexing and burdensome, are nothing to the public creditor, who has the right to look to the whole people for the payment of his demand. The duty of the common council is continuing, and does not cease with the levying of one tax which is in part unsuccessful. It ends only when the whole money is collected and the debt actually paid. They cannot, therefore, say that their powers are exhausted and no new tax can be levied.

The objection that the council are prohibited by section 8, chap. 256, Laws of 1861 (Supplement to Local Laws, page 345) from levying taxes to pay these judgments, stands on no better foundation. Counsel for the relator insists that the prohibition was not intended to be so applied. For one I cannot agree with him—I think it was. But whether I am right or wrong is immaterial. If it was not so intended, then it does not stand in the way. If it was, then I think it is clearly repugnant to the constitution and wholly void, for the reason that, if valid, it would deprive the relator of every efficient means for collecting his debt. The statute which was in force at the time the debts were contracted, declared that "no property, real or personal, of any inhabitant of the city, or of any individual or corporation, should be levied upon or sold by virtue of any execution issued to satisfy or collect any debt, obligation or contract of the city." Priv. Laws, 1856, chap. 119, sec. 2. This is still the law. It was likewise provided that no execution should issue upon such judgment, but the same, unless reversed, should be levied and collected as other city charges, and when collected should be paid by the city treasurer to the person entitled thereto, upon the delivery of a proper voucher; but if not paid within sixty days after the treasurer is required to make his return of city taxes next after the rendition of the judgment, execution may

be awarded by order of the court, on special application therefor. Idem, sec. 3. It is manifest from these provisions that credit must have been given on the faith of the taxing power, the exercise of which was made the specific duty of the common council. Persons dealing with the city must have looked to that as the means of compelling payment, and it cannot be supposed that they would have trusted upon any other conditions. For although it is provided, upon failure to levy and collect the amount, that execution may issue against the property of the city, and this remedy would still be left, yet everybody knows that as a means of compelling payment, especially in these times when many civil corporations are so deeply involved in consequence of the wild and ruinous speculations of the past, it would be practically worthless, and must ever have been so regarded. And courts must, I think, so far take notice of the nature and organization of these bodies, and the business they transact, as to know that they have not property out of which their debts can be satisfied upon execution, and that their legitimate and only mode of discharging them is by taxation. To say, therefore, that the creditor can have his execution against corporate property and nothing more, is to turn him away remediless. Hence I can readily say that the prohibition to levy taxes is a destruction of the remedy, and this I do not believe the legislature possess the power to do. Upon this subject I have expressed my views at length in *Von Baumbach vs. Bade*, 9 Wis., 559, and *Phelps vs. Rooney*, 12 Wis., 698, and I do not care to add anything to what is there said; I may also refer to the recent decision of this court in the case of *Oatman vs. Bond*, upon what is popularly known as the *Farm Mortgage Law*.

The only remaining fact set up in the return is, that the mayor and several of the aldermen named in the alternative writ, have since gone out of office, and that others have been chosen and now act in their places. This is no objection. The duty of levying the taxes is perpetual upon the officers named in the writ and their successors; and the peremptory writ may be directed to and enforced upon the mayor and

January Term, common council of the city generally.   *The People vs. Collins,* 19 Wend., 56, 68.

Demurrer sustained.

NOTE.—Chapter 256, Local Laws of 1861, authorized the city of Madison to settle its indebtedness upon certain bonds (not issued to aid in the enlargement of the state capitol) by issuing new bonds for an amount not exceeding *half* the amount due.   The 8th section is as follows: "At the time designated for that purpose, the common council of the city of Madison may, annually, levy such axes for the current expenses of the city and for the support of schools as are authorized by law, and shall also levy an amount of taxes for interest upon bonds sufficient to pay the interest for one year on the bonds issued under *this* act, and upon the bonds issued to aid in the enlargement of the state capitol, but shall levy no taxes for any other purpose whatever."—REP.