# CASES DETERMINED

AT THE

# *August Term, 1882.*

THE STATE EX REL. SLOAN, STEVENS & MORRIS VS. WARNER, Secretary of State.

*August 30, 1881 — September 19, 1882.*

MANDAMUS: PLEADING: OFFICER. *(1) Necessary averments in petition. (4) When peremptory writ will issue (10) to officer though proceeding commenced against his predecessor.*
SECRETARY OF STATE. *(1-5, 8-10) Powers and duties as auditor.*
SUPREME COURT. *(5, 9) In what matters will direct auditing officer.*
INTEREST. *(5) Right to interest a question of law. (7) Not allowed on unliquidated demands.*

1. *Mandamus* will not lie to compel the secretary of state to audit and allow a claim against the special trust fund known as "the trespass fund," where the petition does not aver that there are moneys in the state treasury belonging to that fund, properly applicable to the payment of the claim.

2. Under the decision in *Sloan, Stevens & Morris v. The State*, 51 Wis., 623, it became the duty of the secretary of state to audit the claim of the relators (plaintiffs in that action), upon proof of their employment by the governor, at such sum as the proofs presented to him showed their services to have been reasonably worth.

3. For the purpose of ascertaining the value of such services the secretary of state might have required the claimants to produce evidence on that subject, and might also have taken evidence on the part of the state.

4. An issue upon the question of the relators' employment having been made, upon the return of the secretary of state to an alternative writ of *mandamus* commanding him to audit their claim, and such issue having been determined in their favor, it is the duty of the secretary to proceed to audit the claim, and a peremptory writ will issue directing him to do so.

The State ex rel. Sloan, Stevens & Morris vs. Warner, Secretary of State.

5. Whether the relators are entitled to interest on the sum found to be due them upon their claim is a question of law, and this court has the right to direct the secretary of state upon that matter.

6. The value of the relators' services not having been fixed by any agreement, it was their duty, upon presenting the claim for audit, to fix such value by legal evidence.

7. The amount of the claim having been unliquidated until the value of the relators' services was fixed by the special verdict of a jury in the *mandamus* proceedings, interest thereon will be allowed only from the date of such verdict.

8. The secretary of state having, in his return to the alternative writ, denied that the relators' services were worth the amount claimed by them, and having consented that the issue upon, that question should be tried by a jury, is bound, as auditing officer, by the verdict fixing the value of the services.

9. TAYLOR, J., is of the opinion that had not the secretary of state tendered an issue as to the value of the relators' services, this court would not have passed upon the question, but have simply directed him to audit and allow the claim at such sum as the evidence produced before him should show the services to have been reasonably worth.]

10. The duty of auditing the claim was a continuing one upon the secretary of state, as an officer of the state, and the peremptory writ commanding the performance of such duty will issue against the present incumbent of that office, although the proceedings were commenced against his predecessor. *State ex rel. Bushnell v. Gates*, 22 Wis., 210.

An alternative writ of *mandamus* was awarded to the secretary of state upon petition of the relators. The petition stated substantially the same facts as were contained in the complaint in an action for the same cause brought by the relators against the state (51 Wis., 623), with the exception that it contained no averment that any "trespass funds" remained in the state treasury. The mandate of the alternative writ was, that the secretary audit and approve the account of the relators, and draw his warrant therefor on the state treasurer, payable out of the "trespass fund" in the treasury, or show cause to the contrary. The relators moved that a peremptory writ of *mandamus*, in that behalf,

issue to the secretary; and the secretary moved that the alternative writ be quashed.

For the relators there was oral argument by *I. C. Sloan.*

For the respondent there was a brief by *Alex. Wilson,* Attorney General, and oral argument by *H. W. Chynoweth,* Assistant Attorney General.

The following opinion was filed September 27, 1881:

Lyon, J. In *Sloan v. The State,* 51 Wis., 623, it was held that the claim of the relators cannot be enforced by action against the state, but that they are entitled to be paid for their services out of the "trespass fund" in the state treasury, and that *mandamus* will lie to compel the secretary of state to audit and allow their claim.

Obviously, the secretary cannot be required to audit and allow the claim unless there are moneys in the treasury belonging to that fund. Hence, the petition should aver that there are moneys in the treasury properly applicable to the payment of the claim. The petition upon which the alternative writ issued fails to show that fact. The record and judgment in the above mentioned action are made a part of the petition by reference thereto, but that only shows that when such action was commenced there was money belonging to the trespass fund in the treasury; not that it remained there when the petition herein was filed.

The petition being insufficient, the motion to quash the alternative writ must be granted, unless, within twenty days, the relators supply the defect in their petition by amendment.

*By the Court.*— The motion for a peremptory writ is denied.

After the foregoing opinion was filed the petition was so amended as to allege that at the time the services mentioned in the relators' claim were rendered there was, and ever since

has been, and still is, in the state treasury, more than $100,000 belonging to the St. Croix land grant trespass fund and properly applicable to the payment of the claim. A second alternative writ of *mandamus* was thereupon issued. The substance of the return of the secretary of state thereto will sufficiently appear from the opinion. The relators answered the return, alleging, among other things, that *B. J. Stevens* and *I. C. Sloan* were duly employed by the governor of the state and that their services were worth the full sum of $5,000. Both parties consenting thereto, it was ordered, December 20, 1881, that the following specific questions of fact be tried by a jury in the circuit court for Dane county: 1. Were *B. J. Stevens* and *I. C. Sloan* employed by the governor of the state of Wisconsin to prepare briefs and argue in the supreme court of the United States, the cases of *Schulenberg and others v. Harriman* and *Schow and others v. Harriman,* as mentioned and stated in the pleadings and the account of said relators? 2. What was the value of the services of said *Stevens* and *Sloan* therein stated?

On the first Monday in January, 1882, the term of office of the respondent *Warner,* as secretary of state, expired, and he was succeeded in that office by Ernst G. Timme.

The above questions were tried in the circuit court for Dane county at the April term, 1882, and the jury found a verdict answering the first question, "Yes;" and the second question, "$5,000." They also found (under a direction of the circuit court that they might cast interest on the amount fixed by them as the value of the services, from the time the claim was filed in the office of the secretary of state to the date of their verdict), that the claim was so filed June 15, 1875, and that the interest thereon amounted to the sum of $2,391. The proceedings of the circuit court having been duly certified to this court, the relators moved for judgment that they were entitled to the sum of $5,000 and interest thereon from June 15, 1875, and that a peremptory writ of *mandamus*

issue to the secretary of state directing him to audit and allow their claim at that amount.

There was a brief by *Sloan, Stevens & Morris,* the relators, *in pro. per.,* and oral argument by *Mr. Sloan:*

1. The action did not abate on the retirement from office of the former secretary of state. The proceeding is against the office and not against the person of the officer. *Commissioners v. Sellew,* 99 U. S., 624; *Maddox v. Graham,* 2 Met. (Ky.), 56; *State ex rel. Soutter v. City of Madison,* 15 Wis., 30; *Pegram v. Commissioners,* 65 N. C., 114; *People v. Collins,* 19 Wend., 56; *State ex rel. Bushnell v. Gates,* 22 Wis., 210; *State ex rel. Carpenter v. Beloit,* 21 id., 280. It is only when the purpose is to punish the officer for contempt that it becomes a personal proceeding. *People v. Champion,* 16 Johns., 61; *People v. Collins, supra.* See, also, R. S., secs. 2800, 2801, and revisers' notes. 2. The court may direct the amount at which the relators' claim shall be audited. It is well settled that by *mandamus* auditing officers will be required to make their audit according to law. If the compensation is fixed by statute or by agreement, they will be required to audit the compensation so fixed. If they have already audited an account at a less sum than that fixed by statute or agreement, they will be required to set aside the audit already made, and to re-audit according to law. *People v. Auditors,* 82 N. Y., 80; *People v. Police,* 75 id., 38; *People v. Green,* 63 Barb., 390; *People v. Supervisors,* 40 How. Pr., 54; *People v. Supervisors,* 56 Barb., 452; *State v. Hastings,* 15 Wis., 83; *Fowler v. Peirce,* 2 Cal., 165; *People ex rel. McCauley v. Brooks,* 16 id., 11; *Swann v. Buck,* 40 Miss., 268; 5 Wait's Pr., 561–6. In this case the auditing officer is required to audit the *quantum meruit.* With that in view he consented to the order referring the question of amount to the jury. The *quantum meruit* having been ascertained, it would be a useless matter to refer the question of amount to the auditing officer, when by law he is required to audit the same at the *quantum*

The State ex rel. Sloan, Stevens & Morris vs. Warner, Secretary of State.

*meruit.* *Mandamus* never goes to compel the performance of that which is fruitless. *People v. Tremain,* 17 How. Pr., 142; *Commonwealth v. Supervisors,* 29 Pa. St., 121. 3. To the point that the relators were entitled to interest from the date of the presentation of their claim, they cited: *People v. Commissioners,* 5 Denio, 403; *Comm. v. Kempshall,* 26 Wend., 404; *Republica v. Mitchell,* 2 Dall., 101; *Thorndike v. U. S.,* 2 Mason C. C., 1; *Shipman v. State,* 44 Wis., 458; *People v. Stevens,* 71 N. Y., 527, 549; *State v. Farwell,* 3 Pin., 393, 421; *White v. Miller,* 78 N. Y., 393, and cases there cited; *Gammon v. Abrams,* 53 Wis., 323; *Marsh v. Fraser,* 37 id., 149; Wood's Mayne on Dam. (1 Am. ed.), 215; *David v. Conard,* 1 Greene (Iowa), 336; *Ford v. Tirrell,* 9 Gray, 401; *Gammell v. Skinner,* 2 Gallison C. C., 45.

For the respondent there was a brief by the *Attorney General,* and oral argument by *H. W. Chynoweth,* Assistant Attorney General. They argued, *inter alia:* 1. The suit has abated. The case of *Commissioners v. Sellew,* 99 U. S., 624, in which the doctrine of *State ex rel. Soutter v. City of Madison,* 15 Wis., 30, is approved, also cites with approval the case of *U. S. v. Boutwell,* 17 Wall., 604, which holds that a suit like this abates on the termination of the office of the officer against whom the writ was directed. See also *Secretary v. McGarrahan,* 9 Wall., 313; 2 Dillon on Munic. Corp., secs. 885 et seq.; Wood on Mandamus, 133. The decision in *U. S. v. Boutwell, supra,* is based upon the statute 9 Anne, ch. 20, sec. 1, and its acknowledged interpretation in England. That statute is identical with sec. 3451, R. S., and the acknowledged interpretation in England is binding upon the courts of this state. *Pennock v. Dialogue,* 2 Pet., 1; *Cathcart v. Robinson,* 5 id., 264; *Draper v. Emerson,* 22 Wis., 147; *Perkins v. Simonds,* 28 id., 90; *Wiesner v. Zaun,* 39 id., 188; *Kilkelly v. State,* 43 id., 604. All cases holding the doctrine that the suit does not abate are cases against corporations, and those in this state are suits to compel the levy of taxes in which no de-

mand was necessary.   Wood on Mandamus, 132.   In this case the writ would not lie until a demand was made.   But no demand has been made upon the present secretary of state, and it would be manifestly unjust to adjudge him in default. He might audit the relators' claim on presentation thereof. The court has no right to assume that he would not, and order him to do so, before he has declined.   2.   This court has no power to direct that the claim be allowed at any specific sum. The issue sent to the jury as to the value of the relators' services was immaterial and can now be wholly disregarded. *State ex rel. Merrill v. School Land Commissioners*, 9 Wis., 200. And anything of substance against the right of the relators to the peremptory writ can be urged at any time before the writ issues.   *People v. Batcheller*, 53 N. Y., 128.   The claim in this case is an unliquidated one, the amount thereof having never been fixed except by the verdict.   If the secretary has not the power to fix the amount, *mandamus* cannot be resorted to against him unless such amount has been ascertained and liquidated.   2 Dillon on Munic. Corp., 840, and cases cited; 1 Ohio St., 322.   If the secretary has the power both to audit and allow this claim, all the court can do is to direct him to pass upon it, using his own judgment as to the amount to be allowed.   *People ex rel. Wilson v. Supervisors*, 12 Johns., 414; *Hull v. Supervisors*, 19 id., 259; *People ex rel. Gas Co. v. Supervisors*, 11 Cal., 42; *Selkirk v. Sacramento Co.*, 3 id., 323; *Rice v. Commissioners*, 13 Pick., 225; *People ex rel. Bull v. La Salle Co.*, 84 Ill., 303; *Ex parte Hutchinson v. Commissioners*, 25 Wend., 692; *People ex rel. Johnson v. Supervisors*, 45 N. Y., 196; *People ex rel. Bank v. Supervisors*, 51 id., 401; Wood on Mandamus, 99; *People ex rel. Bank v. Board of Apportionment*, 5 Thompson & Cook (N. Y.), 382; *Clayton v. McWilliams*, 49 Miss., 311; *People ex rel. Paving Co. v. Detroit*, 34 Mich., 201; 2 Dillon on Munic. Corp., 829; *King v. Justices of Kent*, 14 East, 395; High's Ex. Leg. Rem., 349; *Tuolumne Co. v. Stanislaus Co.*, 6 Cal., 440; *Portwood v. Montgomery*

*Co.*, 52 Miss., 529; *Garrard County Court v. McKee*, 11 Bush (Ky.), 234; *In re Petition of Howland v. Eldridge*, 43 N. Y., 457; *State ex rel. Little v. Township*, 37 N. J. L., 84; *Bailey v. Ewart*, 52 Iowa, 111; *People v. Auditor*, 2 Col., 97; *Holliday v. Henderson*, 67 Ind., 103; *U. S. v. Boutwell*, 3 McArthur, 172; *Shober v. Cochrane*, 53 Md., 544; *State ex rel. Martin v. Doyle*, 38 Wis., 92.     3. No interest can be allowed on this unliquidated claim.  *Shipman v. State*, 44 Wis., 458; *Martin v. State*, 51 id., 407.

The following opinion was filed September 19, 1882:

TAYLOR, J.  A brief statement of the facts out of which the claim of the relators in this case arose will be necessary to understand the points raised by the counsel on the final hearing.  In 1874 the relators were employed by the governor of this state to appear on the part of the state in the supreme court of the United States and argue two cases then pending in said court, in which one Harriman was the defendant in error.  Harriman was an agent of the state appointed under the provisions of sec. 1, ch. 46, Laws of 1866, to look after and protect the lands granted to this state by the United States and by this state to the "St. Croix & Lake Superior Railroad Company."  These suits grew out of the seizure of large amounts of logs and timber by said Harriman as such agent of the state, upon a claim that they were cut upon such lands, and that the plaintiffs in error, in whose possession such timber and logs were found, were trespassers.  The plaintiffs in error denied the title of the state, and alleged that the title was in them; or, if not them, in the United States.

The relators prepared a brief and argued the cases in the supreme court on behalf of the state on the part of Harriman, the defendant in error.  The decision of that court affirmed the right of the state to the logs and timber.  The amount in controversy in the suits was very large, and the

decision also determined the right of the state to other large quantities of lumber and logs, as well as to the lands granted to the state by the United States. No agreement was made by the relators as to the amount of compensation they should receive for their services. After the services were performed and the cases decided, the relators presented a claim of $5,000 for such services to the secretary of state, and requested him to audit the same, and draw his warrant on the treasury for the payment thereof. The secretary of state refused to audit the account or allow the same, or any part thereof. The relators then presented their claim to the legislature, and it refused to make any appropriation for the payment thereof; and after such refusal they commenced an action against the state in this court to recover the value of their services. In that action this court decided that the relators could not recover of the state for their services. *Sloan, Stevens & Morris v. State*, 51 Wis., 623. The majority of the court held that a judgment in favor of plaintiffs in that action would constitute a debt against the state on account of a work of internal improvement, and would therefore be a violation of sec. 10, art. VIII, of the constitution. It was also held in that case that the plaintiffs were entitled to have their pay for the services performed out of any funds in the treasury collected by the agents of the state for trespasses upon said lands, and that their only remedy was to present their claim to the secretary for audit and allowance under the provisions of sec. 5, ch. 46, Laws of 1869, as amended by sec. 1, ch. 75, Laws of 1871; the court holding that the claim clearly came within the spirit if not the letter of that section, which provides " that all compensation herein mentioned, and all expenses heretofore or hereafter incurred by any state officer under direction from the governor in relation to the protection of said lands or securing such protection, shall first be audited and approved by the secretary of state, and shall be paid by the state treasurer; and a sum sufficient to

pay the same, to be audited as aforesaid, is hereby annually appropriated out of any money in the state treasury received from collections made by said agent or agents in pursuance of this act."

After this decision the relators again presented their claim to the secretary of state, accompanied with evidence of their employment by the governor. The secretary refused to audit their claim, or any part thereof, upon the ground, as is alleged, that he had no lawful authority so to do. The relators, upon an affidavit setting forth all the facts, applied to this court for a writ of *mandamus* to compel the secretary of state to audit their claim and draw a warrant upon the state treasurer for the amount thereof. An alternative writ was issued, directed to and served upon the then secretary of state, *Hans B. Warner.* Upon the return day of the writ the secretary of state appeared by the attorney general and made a return to the writ. The return to the writ admits, by not denying, the allegation in the writ that the relators presented their claim to him as alleged in the writ, and that he refused to audit the same or any part thereof, and by way of excuse for not auditing the same and drawing his warrant upon the treasurer for the amount audited, he admits that the relators performed the services as set out in the writ, but denies upon information and belief that the relators were employed by the governor of the state to perform such services, and also, upon information and belief, denies that there is any certificate of the governor, or of any other state officer, on file in his office showing such employment. He then alleges that such services of the relators were not worth the sum of $5,000 demanded by the relators, and were not worth to exceed the sum of $500, and sets out some reasons why the relators' services in the cases mentioned, so far as such services were rendered in behalf of the state, were not worth the sum of $5,000.

Upon the return made to the writ it is very clear to us that

the relators would have been entitled to the peremptory writ to compel the secretary to audit and allow the account of the relators for their services at such sum as they were reasonably worth, and draw his warrant upon the treasurer therefor, had it not been for the denial of the employment by the governor. This is the only thing set out in the return which would excuse the secretary from proceeding to audit and allow the relators' claim for the amount which, upon investigation and proofs, they were shown to be worth. All other questions which could arise in the case were settled by this court in the case of *Sloan, Stevens & Morris v. State, supra.* In that case it was held by all the members of the court that the services, if performed, as they were alleged to have been, upon the employment of the governor, were a proper charge to be defrayed out of the funds in the treasury collected and paid in by the agents of the state under the provisions of sec. 5, ch. 46, Laws of 1869, as amended by sec. 1, ch. 75, Laws of 1871. The services were strictly for the protection of the lands referred to in said act, or for securing such protection. The litigation in which the services were performed grew out of acts done by the agents of the state in the discharge of their duties in the protection of such lands so held in trust by the state, and it was clearly equitable that the trust funds in the hands of the state arising out of such lands should be applied to the discharge of all compensations and expenses incurred by the state in protecting the same.

Upon that point there was and is no disagreement in this court. That question having been settled, and it also having been settled that the only method of paying such compensations and expenses was to present the same to the secretary of state for audit and allowance, under the provisions of the law above referred to, it became the duty of the secretary of state to proceed to audit the account of the relators upon proof that the governor had employed them, as they allege. We do not say that the secretary should have audited the

claim at the sum of $5,000, but at such sum as the proofs presented to him showed the services to have been reasonably worth. And for the purpose of ascertaining the real value of such services, the secretary had the undoubted right to require the claimant to produce evidence, and he might also have taken evidence on the part of the state upon that subject. The fact that he supposed the services were not worth the sum of $5,000, as charged, was no excuse for his not proceeding to ascertain their real value, and audit them at such value when ascertained. This, we think, is the well settled rule in cases of this kind. See *People ex rel. Johnson v. Board of Supervisors*, 45 N. Y., 196, and the cases cited by the learned counsel for the relators in his brief.

The case in 45 N. Y. was in its facts very much like the case at bar, and the court of appeals held that "an account for legal services must be presented to the board of supervisors of the county, and must be audited and allowed by them; but the amount to be allowed, in the absence of express contract or statute, is somewhat in their discretion. But where the same are legally chargeable to the county, it is the duty of the board in good faith to audit them, and on their refusal to act a *mandamus* is the proper remedy to compel them." Justice FOLGER, in delivering the opinion, page 200, says: "Where an account is presented for services which are legally chargeable to the county, it is the duty of the board to audit and allow it. How much shall be allowed rests in its discretion, in subservience to established legal rules. But it must take action — audit and allow the claim, when legal, at some amount; and if it does not, where there is no remedy by action, it can be compelled by *mandamus* to proceed so to do." See, also, *Brady v. Supervisors*, 2 Sandf., 460; *People v. Supervisors*, 10 Wend., 363.

The case at bar was in all respects like the case first above cited. This court had decided that the relators' claim was a proper charge against the trust funds in the treasury, and

that it was the duty of the secretary of state to audit and allow the claim upon proper proofs presented to him of their employment, and the value of their services, and that they had no remedy for their claim by action against the state. Upon this state of the case the secretary would only be justified in refusing to audit the account at all, if there was no proof of the employment of the relators by the governor, or any other state officer having power to make the employment. Upon the return to the writ he justifies his refusal to audit the claim for want of proof of such employment. It was therefore a proper issue to be made in this action. It was made, and the issue has been found against the respondent, and the finding upon that point is fully sustained by the evidence. Upon this issue being found against the respondent, it is his clear duty to proceed to audit the claim, and a peremptory writ should issue directing him to do so.

The relators ask that the writ should direct the secretary of state to allow and audit their claim at the fixed sum of $5,000, and interest thereon at the rate of seven per cent. from the time it was first presented for payment to the date of allowance. Whether the relators are entitled to interest on the sum which is found due to them upon the claim is a question of law, and there can be no doubt but this court has the right to direct the secretary upon that matter. The amount of the relators' claim was unliquidated. It was not fixed by any contract. The amount they were entitled to recover, if they had been allowed to recover the same in an action against the state, would have depended upon proofs showing what they were reasonably worth, and upon the evidence it would have been a question of fact for the jury if the value of the services as claimed by the plaintiffs was denied by the state. We are unable to distinguish this case from the cases of *Marsh v. Fraser*, 37 Wis., 149, and *Shipman v. State*, 44 Wis., 458, and *Martin v. State*, 51 Wis., 407, in all of which, in like cases, it was held that the plaintiff

could not recover interest. It also appears, from the record in this case, that no competent proof of the value of their services was at any time presented to the secretary of state when he was asked to audit and allow the claim. No value having been fixed to the services by agreement with any officer who had the power to fix the same, it was the duty of the party presenting the same for audit and allowance to fix such value by legal evidence, and it was clearly not obligatory upon the secretary of state to receive the unsworn statement of any person upon that subject.

We are of the opinion that the relators are only entitled to interest on the amount claimed from the date of the verdict of the jury finding the value of said services.

The learned attorney general objects to the issuing of a peremptory *mandamus* directing the secretary of state to audit and allow the relators' claim at the fixed sum of $5,000. Where the law does not fix the amount which is due the claimant, and such amount is not fixed by a valid contract, but is left to be fixed by evidence to be presented to the auditing officer, ordinarily this court would direct the auditing officer to proceed to audit and allow the claim at such sum as the evidence produced before him showed was due to the claimant. In this case, however, the secretary of state in his return denies that the relators' services are of the value of $5,000, as claimed by them, and alleges that they are worth but $500; and he has consented that the court make an issue upon the value of such services, and that such issue should be tried by a jury in the circuit court for Dane county. That issue has been tried and the jury has found that the services were worth the sum of $5,000. Having asked a submission of that question to a jury for the purpose of aiding him in the discharge of his duty as auditing officer, in case he should be directed to audit the same by the order of this court, and the verdict of the jury upon that question being abundantly supported by the evidence, we think the secretary, as auditing

officer, should be bound by it, and that he should not be permitted to require the relators to make any further proof of the value of their services before him. However uncertain the value of their services might have been before this issue was tried and determined, that amount is now fixed, and should be audited as fixed by the jury. Had not the secretary of state tendered an issue in his return as to the value of the relators' services, my own opinion is that this court would not have passed upon the question, but have simply directed the secretary to audit and allow the relators' claim at such sum as the evidence produced before him showed they were reasonably worth. This was the order made in the case of *People v. Supervisors*, 45 N. Y., 196. But having asked, for his own relief, that the amount of the relators' claim should be fixed by the verdict of a jury, we see no objection to directing him to audit it at the sum so fixed by the jury.

The learned attorney general has made a very able argument against proceeding further in this action, because *Hans B. Warner*, to whom, as secretary of state, the alternative writ was issued, is no longer in office, his term of office having expired since the issuing of such writ, and another person having been duly elected and qualified as his successor. The peremptory writ must issue, if one be ordered in this case, to the person now in office. The objection is that the present secretary has not had his day in court, and should not be commanded to do an act against the doing of which he has had no opportunity of being heard. The learned attorney general, to sustain this objection, relies very much upon two decisions of the supreme court of the United States,— *U. S. v. Boutwell*, 17 Wall., 604, and *Secretary v. McGarrahan*, 9 Wall., 298. These decisions are in point, and go very far to sustain the position taken by the learned attorney general. The same question has, however, been before this court and other state courts, and a different

conclusion has been reached under like circumstances. *State ex rel. Soutter v. Madison,* 15 Wis., 30; *State ex rel. Bushnell v. Gates,* 22 Wis., 210; *People v. Collins,* 19 Wend., 56; *Maddox v. Graham,* 2 Met. (Ky.), 56; *People v. Shout,* 16 Johns., 60; *Pegram v. Commissioners,* 65 N. C., 114.

In the case of *People v. Collins, supra,* which was a *mandamus* to compel the supervisors of the town to open a highway, Justice COWEN, who delivered the opinion, says upon this subject: "The duty is perpetual on the present commissioners of Smyrna and their successors, and the peremptory writ may be directed to and enforced upon the commissioners of the town generally. To say otherwise would be a sacrifice of substance to form."

In the case of *State ex rel. Bushnell v. Gates, supra,* which was a proceeding by *mandamus* to compel the clerk of the town to insert in the tax roll the amount of a judgment in favor of the relator against the town, under the provisions of secs. 77, 78, ch. 15, R. S. 1858, the late Justice PAINE says: "It seems the papers laying the foundation for this application were served on the predecessor in office of the respondent. It may be that in such cases, in proceedings to charge a party personally with contempt, some notice or request should be first served upon him, and that he ought not to be so charged upon the strength of the proceedings taken against his predecessor of which he may in fact have had no knowledge. But so far as the advancement of the principal remedy is concerned, it is to be regarded as a proceeding against the officer, and not against the individual; and where proper papers have been once served upon the officer, any proceeding which they warrant may be taken against his successor without commencing *de novo.* This rule is essential to the due administration of justice, which might otherwise be baffled by the regular changes in office, or defeated by resignations made for the very purpose of destroying proceedings already commenced." It is true this decision was

made before the decisions in 9 and 17 Wallace, above cited, but it is supported by the authorities cited from other courts, and is in accord with a later decision of the supreme court of the United States. See *Commissioners v. Sellew*, 99 U. S., 624. In the case at bar there was a continuing duty on the secretary of state, as an officer of the state, to audit the claim of the relators. That duty rests as much upon the present incumbent as it did upon his predecessor, *Hans B. Warner*. There can be no good reason given why the peremptory writ should not go against him, and the authorities clearly justify such a proceeding.

*By the Court.*— Ordered, that a peremptory writ of *mandamus* be issued, directed to the present secretary of state of the state of Wisconsin, commanding him to audit and allow the relators' claim at the sum of $5,000 with interest thereon at the rate of seven per cent. per annum from the 24th day of April, A. D. 1882, and to draw his warrant upon the state treasurer, for the amount so audited, in favor of the relators, to be paid out of any money in the state treasury belonging to the fund mentioned in section 1, chapter 75, Laws of 1871.