THE PEOPLE ex rel. STEPHEN C. JOHNSON, Respondent, *v.* THE BOARD OF SUPERVISORS OF DELAWARE COUNTY, Appellants.

A county board of commissioners of excise has power to employ an attorney to conduct the prosecutions for penalties, which they are authorized to institute, and as it acts as the agent of the county in so doing, the claims for such services are a county charge.

An account for such legal services must be presented to the board of supervisors of the county, and must be audited and allowed by them; but the amount to be allowed, in the absence of express contract or statute, is somewhat in their discretion. But where the same are legally chargeable to the county, it is the duty of the board in good faith to audit them, and on their refusal to act, a mandamus is the proper remedy to compel them.

Where a board of supervisors has once considered a claim and audited and allowed it at a certain amount, a mandamus cannot issue to compel it to audit the claim anew and allow it at a greater amount, but where there are distinct and separate items in the account, the board of supervisors can no more wholly reject or refuse to audit one of those items, which is a legal charge, on the ground that it is not legal, than they can reject for

that reason a whole account, and a mandamus will go to compel such audit.

What should be the form of a mandamus in such cases stated by FOLGER, J.

(Argued February 21, 1871 ; decided March 21, 1871.)

APPEAL from an order of the General Term in the Third department, granting a peremptory mandamus on an appeal by the relator from an order of the Special Term, denying a motion for an attachment against the board of supervisors for an alleged contempt.

During a portion of the years 1859 and 1860, the relator was attorney for the board of excise of Delaware county. He presented to the board of supervisors of that county his bill for the legal services rendered as such attorney to the excise board. including services in two suits known as the Coan and Sackrider suits. In the latter, a judgment was recovered before a justice of the peace, which was on appeal reversed in the County Court, and on appeal from the judgment of the County Court that judgment was reversed and that of the justice affirmed. Sackrider then appealed to the Court of Appeals, where after two arguments the judgment of the Supreme Court was reversed on the ground that the authority of the present relator to bring the suit in Justices' Court against Sackrider was not sufficiently proved.

The supervisors offered him the sum of $300 provided he would release the county from all claims on account of the costs and disbursements recovered in the suits conducted by him. The relator refused to accept the proposition, and applied to the Supreme Court for a peremptory mandamus to require the board to vacate its order and to proceed and audit said accounts, which application was granted.

On the service of the mandamus, the board of supervisors made an order vacating their previous action, and referred the relator's accounts to a committee, who made a report allowing all the usual taxable costs in the actions, except the Coan and Sackrider suits, and disallowing all charges for disbursements and services made and rendered in subpœnaing

and procuring the attendance of witnesses at court, other than the statute fees, and also rejecting the claims in the Sackrider suit, above mentioned.   On an order to show cause why an attachment should not issue or *such other or further order* be made as might be proper, the Special Term denied the motion, and on appeal to the General Term that order was affirmed, but they ordered that a peremptory mandamus issue to the board of supervisors of Delaware county, commanding them to allow the relator the bills in the Sackrider suit as well as in the Coan suit, and all the other rejected items.   The supervisors appealed from such order to this court.

The various charges and the grounds of rejection are mentioned in the opinion, as is also the order of the General Term.

*Wm. Gleason,* of counsel for the appellant: That mandamus was not the proper remedy, the Coan and Sackrider suits not being "legal charges," he cited *Brady* v. *Suprs. of New York* (2 Sand., 460); *People* v. *Suprs of Cortland* (40 How., 53); *Boyce* v. *Suprs. of Cayuga* (20 Barb., 394); *People* v. *Suprs. of Columbia* (10 Wend., 363).   That the remedy was by *certiorari* and not *mandamus.*   (36 Barb., 118; 2 Crary Special Prac., 58; 11 Wend., 91; 19 id., 56–58; 14 Barb., 446; 39 id., 652; 18 Wend., 79; 9 id., 508; 14 Barb., 52; 12 Johns., 414; 1 Hill, 362–367; 5 Denio, 565; 33 Barb., 602.)   That the supervisors must exercise their discretion.   (12 Wend., 446; *The People* v. *Supervisors of St. Lawrence,* 30 How. Pr. R., 173.)

*Samuel Hand,* for the respondent: That the relator's claim was a county charge.   (Laws of 1857, vol. 2, §§ 1, 5, 13, 22; *People* v. *Supervisors,* 32 N. Y., 473; *Bright* v. *Supervisors of Chenango,* 18 Johns., 242; *Doubleday* v. *Supervisors of Broome,* 2 Cow., 533; 1 R. S., 386, § 3, sub. 9.)   That the refusal of the supervisors to audit the claim rendered them liable to a mandamus.   (*Hull* v. *Supervisors of Oneida,* 19

Johns., 259; *People* v. *Supervisors of Albany*, 12 Johns., 416.) The Supreme Court at General Term had right, as an original tribunal, to grant the mandamus. (*People* v. *Sheriff of Rensselaer*, 1 Code R., 135; *People* v. *Commissioners of Fort Edward*, 11 How. Pr., 89; *Van Rensselaer* v. *Sheriff of Albany*, 1 Cow., 501; *People* v. *Croton Aqueduct Board*, 49 Barb., 259.) This court, if they regard the order of the General Term as covering too much ground, can modify it with regard to its specification of amounts, and as to items which are discretionary.

FOLGER, J. We have no doubt but that the board of commissioners of excise had the power to employ an attorney and counselor at law, to conduct for them their legal business, and to give them advice, from time to time, as they should need it. The act by which they are created imposes upon them the duty, when cases arise, of commencing and prosecuting legal proceedings. As there is no provision in the act that the members of the board shall be appointed of those who possess the acquired ability to conduct such proceedings, the implication is necessary that when they are obliged, in the performance of their duties, to seek the aid of the courts, they have the power to act by attorney, and with counsel retained by them. And as the board are the agents of their county in the matters confided to them, when acting for it therein, their contracts, express or implied, within the scope of their authority, for legal services, are binding upon the county.

But the charges for such services can be collected in one way only. The account of them must be presented to the board of supervisors of the county, which alone has the power to examine, settle and allow, and to raise the money by tax with which to defray the same. For many of the items of such an account no specific amount is fixed by law, and they must be deemed contingent charges against the county. (*Bright* v. *Sup. of Chenango*, 18 Johns., 242; *Hilton* v. *Sup. of Albany*, 12 Wend., 257; *Brady* v. *Sup. of New York*,

2 Sandf. Sup. Ct., 460.) And when an account is presented for services which are legally chargeable to the county, it is the duty of the board to audit and allow it. How much shall be allowed rests in its discretion, in subservience to established legal rules. (*Id.*) But it must take action, audit and allow the *claim*, when legal, at some amount. And if it does not, where there is no remedy by action, it can be compelled by *mandamus* to proceed so to do. (*People* v. *Sup. Col. County*, 10 Wend., 363.)

The court has the power to decide whether a rejected claim is a legal claim against the county; and if it be a legal claim, it may instruct and guide the board of supervisors by *mandamus*, in the execution of their duty; not to prescribe for them at what amount the claim shall be allowed (unless indeed the amount is fixed by law); but to compel them to admit that it is a legal claim, and to exercise their discretion as to the amount. (*Hull* v. *Suprs. Oneida*, 19 Johns., 259; *Wilson* v. *Suprs. Albany*, 12 id., 416.)

When the board of supervisors has once considered a claim, has once admitted that it is a legal charge against the county, and has in good faith exercised its judgment and discretion upon the amount which should be allowed, a *mandamus* may not issue to compel it to audit anew and allow a greater amount. (*Phœnix* v. *Suprs. N. Y.*, 1 Hill, 362.)

With these general principles stated, we will proceed to the particulars of the case before us. We have no doubt but that the relator has legal claims against the county which the board of supervisors has denied to be such. The board of supervisors has admitted a general liability of the county to the relator for his services and expenditures in the action against Coan. Although it has admitted a liability of the county to pay for the services in the action against Coan, yet it has rejected entire classes of the items in the relator's account of such services. This rejection was upon the ground that the services represented by those items were not legal charges against the county. It is the same in effect to refuse to audit a certain class of items in an account for various

kind of services, for the reason alleged that they are not legal charges, as to reject for such reason a whole account, and the rule applies as well, that the court may by *mandamus* direct that action shall be had on a class of items, as on an entire account. It has rejected entirely, and without discrimination, all the items of his charge for services and expenditures in the action against Sackrider. This court, in *Board of Supervisors* v. *Sackrider* (35 N. Y., 154), held that the action against him was not duly commenced in the court of the justice of the peace, and that the relator did not appear in that court in that action, for the board of commissioners of excise, with sufficient authority. It appeared in that case (and it is admitted in this proceeding), that the authority which he had was a general one, operative in the future without specification, to commence such actions as he saw fit; that there was no meeting or joint action of the board at which it was determined by the board to commence the action against Sackrider; and that none of the commissioners knew of it until after it had been commenced. For this error this court, after two arguments, reversed the judgment of the justice of the peace.

If the board of commissioners of excise had not power, by a general retainer, to authorize the relator to commence actions unspecified, then they had not power by such retainer to bind the county for his services upon such general retainer. For as agents, they could bind their principal only when acting within the scope of their authority. And if the action against Sackrider had gone no farther than the judgment in the County Court, we should hold that the county was not liable for the relator's services therein. But, after the judgment of reversal in the County Court, the board of commissioners of excise, in a formal meeting at which all were present, thus being clothed with authority, adopted and ratified all his acts thus far, assumed the action and benefit of his labors in it, and directed the relator to take the judgment to the General Term of the Supreme Court for review. He thus had a regular and binding retainer, and from that time

forward till the adverse termination of that action in this court, was the attorney and counsel of the plaintiffs therein. And the county was thus made liable to him for his services and necessary expenditures from the commencement until the end.

It is scarcely necessary to say that there is no ground for refusing him payment in the adverse result in the Court of Appeals, which is based upon the error found at the very beginning of the action in the Court of the Justice of the Peace. A question upon which the General Term of the Supreme Court decided in accordance with his view of the law, and upon which this court at one argument stood equally divided, cannot be said to have been ignorantly or negligently considered by him, though the final result was not as he advised it should be.

The different items of his accounts in these two actions may be classified, into those for his services strictly professional, for those not strictly professional, for fees paid to public officers and witnesses, and for other disbursements about the actions.

The relator is entitled to payment for every service which he rendered in these actions as an attorney or counselor at law. By the Code (§ 303) the measure of such compensation is left to the agreement, express or implied, of the parties. There was no express agreement between the relator and the board of commissioners of excise what should be his compensation, if it became a charge against the county. He should be paid, then, what his services were *reasonably worth.* Not according to what they produced to his client, but what such services, in themselves considered, were reasonably worth, looking at the labor, time, talent and skill expended in the bestowal of them.

The services rendered by the relator not strictly professional are comprised in the items of his accounts for the time and travel spent in finding and subpœnaing witnesses. He rendered them by agreement with the board of excise. It was a service essential to success in the actions, and one

which an attorney could render quite as well as another person, but it was not one which required an attorney to perform.   He is not entitled to receive for these more than any person of requisite intelligence could have been employed for.   And it is for the board of supervisors to judge what that sum is, after consideration of all the circumstances.   The board entirely rejected the items for these services in the Coan action.   It held them not legal charges.

The fees to be paid to public officers and witnesses are fixed by law, and the relator not being obliged to pay more than legal rates, cannot receive more, and is entitled to receive as much as he paid, up to that rate.   (*Hall* v. *Supervisors N. Y.*, 32 N. Y., 473.)   There can be no difficulty in arriving at the exact amount of this class of items.

The remaining class of items are those for expenses and disbursements not ordinarily contained in an attorney's account, because not ordinarily necessary there, being for the hire of conveyances, and expenses of man and beast while traveling in the pursuit of witnesses.   These are to be considered in connection with those spoken of above as non-professional services, and they are also included in the agreement with the board of excise.   For them both, the relator is entitled to receive as much as, and no more than, the effective performance of the service by any other person could have been procured for.   For what a constable or any other competent public or private agent would have well done the same work, with that the relator must be satisfied, and all of that the board of supervisors should be satisfied to give him.   This class of items in the accounts in the Coan action the board of supervisors also rejected entirely, considering them not a legal charge against the county.

Treating these accounts in this manner, in our view, it cannot be difficult for the parties to this proceeding to arrive at an accommodation which will be just to both, and which should for that reason be satisfactory to both.

It remains to be seen what power we have through these proceedings to enforce our views, and make them practical in the action of the appellants.

The immediate origin of this proceeding was an order to the appellants to show cause at a Special Term why an order should not be granted, that an attachment issue, as for contempt, for the violation of a peremptory mandamus theretofore issued, or for such other or further order or relief as the court might think proper to grant. The Special Term properly refused to grant an order for an attachment, and declined also to give order for any other relief. It would seem from the order that the alternative relief there asked for was a reference to determine the amount due. The General Term affirmed the order, so far as it refused an attachment, but taking hold of the clause in the order to show cause looking to alternative relief, modified the order of the Special Term, and awarded a peremptory mandamus. Under such a clause in the notice of motion, or in the order to show cause, relief may be given other than that specifically asked for, and to such extent as is warranted by the facts plainly appearing in the papers on both sides. (*Ferguson* v. *Jones*, 12 Wend., 241; *Barstow* v. *Randall*, 5 Hill, 518; *Jackson* v. *Stiles*, 1 Cowen, 135, and note 1.) And on the appeal to the General Term, it had the right to modify the order of the Special Term, in the respect mentioned in the notice of appeal. (Code, § 330.) The notice of appeal to the General Term in this case was from the whole order of the Special Term, denying any relief to the relator. So the General Term had the right to refuse a reversal of the order, to refuse to grant an attachment, and still the right, modifying the order, to grant relief to the relator. (*Martin* v. *Kanouse*, 2 Abb., 390.) And now on the appeal to this court, from the order made by the General Term, this court has the same right to modify the order, and to grant such relief as is legal and the facts will warrant. In our view, the General Term erred in its order, not in directing a peremptory mandamus, for an *alias* or *pluries* mandamus may be granted (Tapping on Mandamus, 333, et seq. ; Bacon, Ab., title Mand. H., and cases cited ; Jacob Law Dict., title Mandamus and Pluries; Angell & Ames on Corporations, chap. 20, § 11);

but in the terms of the order, and of the mandamus which should follow it. Following the terms of the order, it would command the board of supervisors not only to do, but would specify what they should do. It directs them to allow the relator the bills or accounts rendered in the two actions against Sackrider and Coan, and each and every item of them except those for interest; and it specifies the exact sum ($697.08) which shall be paid to the relator, and orders that provision be made for the payment of it. In our judgment, this is more than a court can do. It interferes with the discretion of the board of supervisors in a case in which they have a right, to some extent, to exercise a discretion, and as to part of which they have exercised it. The order would have been right, had it directed peremptory mandamus to be issued to the defendants, commanding them to proceed "to examine, settle and allow," the accounts of the relator of all his *charges in the Sackridge case, and certain items of the Coan case,* awarding to him what his services, as attorney and counselor, and in the inquiry for witnesses and subpœnaing them, were reasonably worth; what moneys he had actually necessarily paid, or was necessarily legally liable to pay, for fees to public officers and to witnesses, but not to exceed the rate allowed by law therefor; and for his other necessary disbursements, what they were reasonably worth; holding them all as to their kind, as legally chargeable to the county, but to be examined, settled and allowed by the board of supervisors, with a discretion as to their degree.

The board should have been commanded to allow them all at some rate, to be arrived at in the exercise of proper judgment, upon the facts and circumstances properly shown to the board. And this Court should and will, in the exercise of its power, on review to modify an order, direct that such a mandamus issue. We do this, because all the facts are before us, in the moving papers of the relator, and in the answering affidavits of the defendants, which need be presented for the formation of our opinion.

The original *peremptory* mandamus, has been served, obedience to it has been attempted, and a return made to it. It appears that certain items of the accounts of the relator which we hold to be legally chargeable to the county, have not been settled and allowed by the defendants, but have been wholly rejected, for the reason that the board held them illegal. In other words they have refused to act upon them, as the law requires that they shall act. There is now presented just the case, where the office of a *mandamus* is appropriate; to set in action an inferior body, which declines any action on a legal claim, holding it illegal and refusing action for that alleged reason. (12 and 19 Johns., *supra.*)

The order of the Special Term, and the order of the General Term should be modified, so that an order of the Special Term should be entered, directing that an *alias peremptory mandamus* issue, commanding the board of supervisors of the county of Delaware to examine, settle and allow, the accounts of Stephen C. Johnson for his services and expenditures in the actions of *The Board of Commissioners of Excise of Delaware County* v. *David Sackrider*, and for his services and expenditures on inquiry for and subpoenaing witnesses in the action of the *Same plaintiffs* v. *John Coan*, and that they allow him what his services as attorney and counselor at law in the action against Sackrider were reasonably worth, considering the labor, time, talent and skill, expended therein and not confining consideration to the results to the county produced thereby; and that they allow him what his services therein, and in the action against Coan, in the inquiry after and the subpoenaing of witnesses were reasonably worth, considering the time and labor expended therein, and that they allow him any moneys necessarily expended by him or for which he is necessarily legally liable, in the action against Sackrider for the fees of public officers or witnesses, at no greater rate for such fees than is allowed by law therefor; and that they allow him for any other moneys necessarily expended by him, or for which he is necessarily legally liable in and about the prosecution of those actions such amount as the

subject-matter thereof was reasonably worth; and commanding said board to distinguish between such items and make known such as are allowed, and such as are allowed in part, and such as are disallowed, and such as are disallowed in part; and that the said board, in accordance with the provisions of law, raise the money sufficient to pay the total amount allowed to the relator, and pay the same to him ; and that the allowance so made in pursuance of such order be in addition to any former allowance or award made to the relator.

Neither party should have costs in this court against the other.

The Ch. J., and GROVER, J., did not vote, and ANDREWS, J., took no part.

All the other judges concurring, judgment modified as stated in opinion.