IN THE MATTER OF THE APPLICATION OF THOMAS MURPHY FOR
A MANDAMUS AGAINST THE COMPTROLLER.

*Comptroller — power of, to audit bills approved by the Superintendent of the Insurance Department — 1873, chap. 593, sec. 2.*

Section 2 of chapter 593 of 1873 provides that "all charges for making examinations of any insurance company, and all charges against any company by any attorney or appraiser of this department, shall be presented in the form of an itemized bill, which shall first be approved by the said superintendent, and then audited by the comptroller, and shall be paid on his warrant, drawn in the usual manner, upon the State treasurer."

*Held,* that under the said section the approval of a bill by the superintendent was not conclusive upon the comptroller, but that the latter had power to examine and pass upon and readjust a bill approved by the superintendent and presented to him for audit and payment, as prescribed in the said section.

APPEAL from an order made at Special Term, directing a peremptory *mandamus* to issue, compelling the comptroller to audit the bill of the relator at $9,800. The claim was presented to the comptroller under the Laws of 1873, chapter 593, which provides, among other things, that "all charges for making examinations of any insurance company, and all charges against any company by any attorney or appraiser of this department, shall be presented in the form of an itemized bill, which shall first be approved by the said superintendent and then audited by the comptroller, and shall be paid on his warrant, drawn in the usual manner, upon the State Treasurer, to the person or persons making such examination."

*E. Newcomb,* for the relator.

*A. Schoonmaker, Jr.,* Attorney-General, for the People.

LEARNED, P. J. :

The papers presented to the comptroller, and called in the moving affidavit an "itemized bill," are as follows : A charge against the Insurance Department, in favor of Mr. Murphy, for appraising nineteen pieces of real estate, owned in fee by the Manhattan Life

Insurance Company, and 209 pieces mortgaged to said company, in all 228 pieces, containing 776 lots. ·

Also the items of the charge :

| | |
|---|---:|
| For expense.................................... | $837 14 |
| For services, at the rate of one-seventh of one per cent, on appraised value, $6,274,000 .................... | 8,962 86 |
| | $9,800 00 |

Also a schedule, giving records of mortgages, value of lands, etc., and amounting in all to only 213 pieces of land, of which the appraised value amounts in all to the sum above mentioned.

Now, without considering whether a charge, at a certain per centage on the total appraisement, may not be said to be "itemized," under the statute, it is plain that a gross charge "for expenses, $837.14," is not "itemized." It does not state what the expense was, or its particulars. It affords no one any opportunity of examining into its correctness, or of deciding whether the expense was for proper or improper purposes. It is a noticeable circumstance that the charge for expenses is exactly the right amount, in odd dollars and cents, to make the whole bill an even sum of $9,800.

But the more important question relates to the power of the comptroller in respect to this bill, if it had been properly "itemized."

The statute (§ 2, chap. 593, Laws of 1873) says that the itemized bill "shall first be approved by the said superintendent, and then audited by the comptroller, and shall be paid on his warrant, drawn in the usual manner," etc. The bill of Mr. Murphy, having been marked "correct" by the superintendent, was, in 1879, presented to the comptroller. He audited it at $720. Mr. Murphy refused to accept that sum, and again presented it to the comptroller in 1880. The comptroller declined to reaudit it, and Mr. Murphy brought this proceeding for a *mandamus*. The Special Term ordered a peremptory *mandamus*, requiring the comptroller to audit the bill at $9,800, and to draw his warrant accordingly, and the comptroller appealed.

The Revised Statutes make it the duty of the comptroller to examine and liquidate the claims of all persons against the State, in cases where provisions for the payment thereof shall be made by

law. (1 R. S. [6th ed.], m. p. 170, § 1, sub. 7.) And the present is a claim against the State, although the State is to be reimbursed. The general duty of the comptroller, therefore, would require an examination of this claim.

The word "audit," used in the act of 1873, undoubtedly means to hear and examine; to pass upon and adjust. We have it used in regard to supervisors, who are to audit accounts payable by counties, and in regard to town auditors, as to accounts payable by towns. (1 R. S., 355, § 46; 367, § 2 [4]; and see *Chase* v. *Saratoga*, 33 Barb., 603; *People ex rel. Sherman* v. *Supervisors*, 30 How., 173.) And the word plainly means a judicial investigation and decision as to the merits of a claim.

It is hardly an exception to this meaning that sometimes the law has determined the amount of the claim, and that the officer having the power to audit, is bound by that determination. The auditing officer is, in that respect, bound, as a jury would be bound in a similar case. If a claim were pending before a jury, and it appeared that the law, or some valid decision, had established its amount, the jury could not disregard the law, or such valid decision. And so, if the law has determined the amount of the present claim, or if the amount has been determined by some valid decision, then the comptroller is bound to follow that law, or that valid decision.

The question then is whether the statute, in saying that the bill shall be approved by the superintendent, meant that his approval should determine the amount, as it were, judicially. It may be noticed that there is no express power given, either to the superintendent or to the comptroller, to take proofs as to the bill. And if any argument against the comptroller's right to examine is urged on this ground, the same argument applies to the superintendent. Nor is there any reason to think that the superintendent would have any better knowledge as to the expenses, or as to the proper charges for such work, than the comptroller would have. If it were intended that the comptroller should exercise no discretion, why did this statute require him to audit? For the meaning insisted upon by Mr. Murphy, it would have been enough to say that the bill should be approved by the superintendent, and then paid on the comptroller's warrant. There are no other claims referred to in this section of this statute than this bill; and it cannot, therefore,

be said that this was only a general provision for auditing claims, the amount of which had *not* been determined by law. But the statute says expressly that *these charges* shall be audited by the comptroller.

Nor is there anything unreasonable in requiring the approval of the superintendent. It would be proper that a bill, before it was submitted to the examination of the financial officer of the State, should, as a preliminary safeguard, be required to have the superintendent's approval. Not that such approval should be binding upon the State, as is here insisted, but to give a double protection against improper claims.

We are not referred to any case where the " approval " of an officer has been made the equivalent of an auditing. And where the auditing officer, as in this case, is one to whom such business is generally intrusted, it needs strong language to infer that such discretionary power is taken from him. Where a statute simply requires that a bill of charges shall be first approved by one officer and then audited by another, we see no reason to construe the statute so as to make the latter requirement of no practical effect. We should rather construe it so that both requirements may stand.

The case of the *People ex rel. Hoyt* v. *Supervisors* (16 Wend., 520) is urged by the respondent as being in conflict with these views. In that case it was decided that the section (69, 1 Rev. Stat., m. p. 615), which authorized the supervisors to increase or reduce damages on the opening of highways, did not apply to the provisions of an act of February 23, 1830, relative to highways in certain counties; and that, in those counties, the verdict of the jury was conclusive, in such cases, on the auditing board. This is only an illustration of what was said above, viz. : That an auditing board or officer may be bound by a previous decision of an authorized tribunal. But it does not aid in settling the present question; which is whether, under this statute, the intention of the legislature was that the "approval" of the superintendent should be a binding decision on the State.

So in the case of *Morris* v. *The People* (3 Denio, 382), if salaries of officers were determined by statute, the auditing board had no discretion. Just as in a suit by an officer for his salary, fixed by statute, a jury would have no discretion as to the amount. But

Mr. Murphy's compensation was not fixed by law, and the question is, to whom did the legislature intrust the determination?

As to the case of *The Amoskeag Manufacturing Company* v. *The Mayor, etc.* (63 N. Y., 637), it is to be noticed that that was a common-law action against the city, and that a city may be sued for any claim against it; in which respect it differs from a county. (*Brady* v. *Supervisors*, 10 N. Y., 260; *Martin* v. *Supervisors of Greene*, 29 N. Y., 645) The plaintiff had done work for the city through its fire commissioners, and sued therefor. The defense was that the chamberlain of the city was required to audit and pay the bills contracted by the fire commissioners; and that he had refused to audit the bill at its full amount. But the city chamberlain does not bear towards claimants that judicial position which boards of supervisors are declared to have, in the cases above cited, in respect to claimants against a county. For, as above remarked, a city may be sued like a private individual, and like a private individual is, in such a suit, bound by its contract. The City of Albany, in that case, through its fire commissioners, had contracted for work to be done by the plaintiffs. That work had been done and the city owed for it. The city could not defeat that claim by the refusal of its own chamberlain to allow it. If the claim had been one against the county, the audit of the supervisors would have adjusted the amount. (*People ex rel. Johnson* v. *Supervisors*, 45 N. Y., 196.)

But in the present case there is no one whom Mr. Murphy can sue. He has been appointed under the authority of the State, and his claim must be passed upon in such manner as the State may provide. So that the question only returns, how did the State provide that his claim should be passed upon; by the superintendent or by the comptroller?

The case of *The People ex rel. Outwater* v. *Green* (56 N. Y., 466) only held that by the statutes relative to the city of New York, the comptroller and auditor had no power of supervision over, or review of the action of the board of supervisors. The case of *Lanigan* v. *The Mayor* (70 N. Y., 454) is but an affirmance of the same doctrine, viz.: That the board of supervisors was the auditing body, and that their decision could not be changed by the city auditor. None of these decisions throw any light on the question before us, viz.:

Whether the "approval" by the superintendent was meant by the legislature to be a decisive auditing.

The learned court, in deciding this motion, said, that if the comptroller was empowered to examine into the justice of the charges, he might determine the whole claim to be unjust and wrong. But that argument equally applies to the position taken by Mr. Murphy. If the superintendent is to approve the claim, he may determine the whole claim to be unjust and wrong. Certainly the statute has given to one or the other of these officers the power, and has imposed on him the duty, of deciding whether the bill is right, and how much of it is right, and what ought to be paid. That power and duty necessarily involves the possibility of making a mistake, and of doing injustice. But that is not the question. We are brought back to the simple question, was the "approval" intended to be conclusive, or was the bill still subject to an actual auditing by the comptroller?

And here we may remark that to require the sanction of two of the officers of the State to a claim like this before it be paid would be nothing unusual. It would be analogous to the case of many claims against the United States. (*United States* v. *Guthrie,* 17 How. [U. S.], 284.)

We have, then, these facts and views: That the comptroller is the officer to whom the duty of examining many other claims against the State is intrusted; that by this section of the act he is especially required to audit this claim; that such requirement is meaningless in the view taken by Mr. Murphy; that the superintendent is not required to "audit," but to "approve"; that the meaning of the word "audit" is to examine and adjust; that the duty of actual auditing is modified only when a statute or a valid decision, or the equivalent, has already determined a definite amount; that the comptroller is as capable of examining and adjusting the claim as the superintendent; that it is not unusual to require the sanction of two officers to a claim; and that none of the decisions cited by the relator throw light on the construction of this section. We conclude that the order directing a *mandamus* to issue requiring the comptroller to audit and pay this bill at $9,800 was erroneous.

We do not understand that the comptroller refuses to audit the

bill at some proper amount, or that he refuses to pay the bill at the amount at which it has already been audited, although the affidavit seems to state a refusal to audit altogether. No point has been made as to whether the comptroller may not re-audit the bill at such amount as he may deem proper. (*People ex rel. Johnson* v. *Supervisors*, 45 N. Y., 200.)

But it would seem altogether incorrect, when a bill has once been audited by the comptroller, that we should direct a re-auditing, in the absence of any proof that the first audit was not just and proper. The relator has not insisted that the auditing already had was not made on good and sufficient evidence, or that the conclusion was not correct. He has only urged that the comptroller had power, not to examine, but only to pay the bill.

The order, therefore, should be reversed, with costs against the relator.

BOARDMAN, J., concurred.

Present — LEARNED, P. J., BOARDMAN AND BOCKES, JJ.

Order reversed, with costs against the relator.