THE PEOPLE OF THE STATE OF NEW YORK EX REL. ABEL S. MYERS v. JOHN BARNES AND OTHERS, AS THE BOARD OF TOWN AUDITORS OF THE TOWN OF HIGHLAND.

*Board of town auditors — rejection of a claim — the remedy of a party aggrieved by the erroneous rejection of a claim is by* certiorari *and not by* mandamus.

An application was made by the relator to compel the board of town auditors of the town of Highland to certify to the board of supervisors as town charges the amount of a judgment recovered against the relator, as a commissioner of highways, in an action brought by him to recover a penalty from an overseer, and also an amount found due him by a former board of town auditors; upon the hearing it was admitted that the bills had been presented to the board in 1885; that they had examined them, decided that the town was not legally liable to pay for the whole, or any part of them, and rejected them.

*Held,* that the writ should not be issued as the board had made a decision. That the remedy of the relator was by *certiorari* and not by *mandamus.* (LANDON, J., dissenting as to the judgment.)

MOTION for a new trial on exceptions ordered to be heard in the first instance at the General Term, after the court had dismissed the proceedings.

Upon the trial before the Ulster County Circuit of the issues framed by a writ of alternative *mandamus* and the return, the court, at the close of the testimony, dismissed the proceedings and directed that the exceptions be heard in the first instance at the General Term. The relator now moves for a new trial. The relator was sole commissioner of highways for the town of Highland for the year 1882. He appointed one Hickok overseer of highways for road district No. 3, and also appointed an overseer for each of the road districts Nos. 12, 18 and 27. He issued road warrants to each of these overseers. The overseers in the three districts last named thereupon resigned their respective

offices, their resignations were accepted by the relator, and he thereupon made an order abolishing districts Nos. 12, 18 and 27 and extending the bounds of district No. 3, so as to include within it the same territory and the same assessments which were embraced in the abolished districts. The warrant to Hickok was amended so as to embrace the added territory and assessments. Hickok consented to act as overseer of district No. 3. The relator being commissioner, and Hickock overseer of highways, the relator required the overseer to proceed to discharge, in a manner indicated by him, certain duties respecting the highways in his district; also to proceed to enforce certain fines and penalties alleged to have been incurred by certain delinquents. The overseer refused and the relator sued him in a Justices' Court to recover the penalties prescribed by the statute against a delinquent overseer. Two trials were had in the Justices' Court; the juries not agreeing, the relator withdrew his suit, paid the costs and then brought another suit against the overseer before another justice, was beaten, appealed to the County Court, where he was again beaten He paid the latter judgment, seventy-six dollars and ten cents. He also paid eighty dollars and fifteen cents for expenses in these suits, in addition to the judgment.

He expended, as commissioner of highways, in repairing the roads and bridges that were damaged after the town meeting of 1881, $128.17 of his own money. This sum was found due him by the board of town auditors, March 4, 1882. All these bills were presented to the board of town auditors for audit, and to be certified to the board of supervisors. The board of town auditors examined the bills and refused to allow them. They were again presented to the board of town auditors in 1885, duly verified. The board of auditors was requested to audit the bill for costs and expenses, and to include this audit, and the amount of the judgment, and the amount found due the relator in March, 1882, in its certificate and statement of the town charges to the board of supervisors. The board of auditors refused, and the writ of alternative *mandamus*, the return, and trial followed.

*T. F. Bush*, for the relator.

*John F. Anderson* and *L. E Carr*, for the respondents.

Learned, P. J. :

The case says: " It is admitted that the bills were presented to the board of town auditors of 1885.  That they examined them and decided that the town was not legally liable to pay for the whole, or any part of them, and rejected them.  The same admission is made as to the action of the board in the year 1883."

The distinction between auditing a bill and rejecting it, on the one hand, and refusing to audit on the other, may seem small, but it is real.

It is pointed out in *People ex rel. Thurston* v. *Town Auditors of Elmira* (82 N. Y., 82), where the court say that " if the relator's bill has been in fact audited by the town board, the *mandamus* awarded was improper.  If it has not been so audited it was right to command performance of that duty."  In that case the board " assumed the right to allow what they pleased, without disputing the facts on the one hand, or the law on the other."

Now, in the present case, the stipulation says that the board examined the bills and decided that the town was not legally liable. That plainly means that, without disputing the facts, they did dispute the law.  Therefore, the board made a decision.

Grant that it was erroneous, it was a decision.  Can we by *mandamus* compel them to decide otherwise ?  I think not.  If there was an erroneous decision of law, the relator's remedy, assuming that he had any, was by *certiorari*.  (Code Civil Pro., § 2140, sub. 3.)  If, without competent evidence, the board had decided the facts against the relator, he would not be without remedy.  (Sub. 5.)

Thus, again, in *People ex rel. Brown* v. *Board of Apportionment* (52 N. Y., 227), it is said " to audit a claim *ex vi termini* imports the exercise of judgment."  Again it was said of a *mandamus* to audit : " This of necessity submits to those officers the power of determining '*pro hac vice*' the legality of the claim as well as its amount."  (*People ex rel. Vandervoort* v. *Cooper*, 24 Hun, 340.) To the same effect *People ex rel. Everett* v. *Supervisors* (93 N. Y., 404.)  So *People ex rel. Equitable Fire, etc., Insurance Company* v. *Fairman* (12 Abb. N. C., 272; affirmed, General Term and Court of Appeals), which seems quite in point.

Now there are certain cases in which an auditing board has to exercise its judgment upon the amount of a claim.  In such cases,

if the board refuses to exercise its discretion, *mandamus* has been held to lie to compel this exercise of discretion. Possibly it would be difficult to make *certiorari* applicable, where the inferior tribunal had not decided on the question of facts. (See *People* v. *Supervisors*, 45 N. Y., 196.) But in the present case there is no discretion which the board has refused to exercise. The amount of the claim on the judgment against relator was fixed. If it was a legal claim, the refusal to allow it was an error of law; an incorrect decision; to be reviewed, as it seems to me, by *certiorari*.

But again, what would the *mandamus* command? Not certainly that the board should allow relator's claim. We are not by *mandamus* to direct an inferior tribunal how to act. The command would be only to audit, that is, to examine and pass upon the claim. But this the defendants have already done. (See remarks in *People ex rel. Thurston* v. *Town Auditors, Elmira, ut supra.*)

I think the judgment should be affirmed with costs.

MAYHAM, J., concurred.

LANDON, J. (dissenting):

The judgment in the County Court was recovered against the relator in his name of office in an action which he was authorized to bring. The judgment was a town charge. (1 R. S., m. p. 357, § 8.) An execution, however, would issue against the relator; he was, therefore, obliged to pay the judgment. (Code of Civ. Pro., § 1931.) This section requires that the sum collected must be allowed the officer in the settlement of his official accounts, except as otherwise specially prescribed by law.

It appears that this sum has not been allowed the relator in the settlement of his official accounts, and the only way open to him to obtain it is to have the board of town auditors include it in their statement and certificates of the town charges to the board of supervisors. The defendants, however, object that the relator is not entitled to be reimbursed the amount of this judgment (1.) Because he brought the action against Hickok, the overseer of the highways, upon his own motion and not upon the complaint and indemnity of any resident of the town. (2.) He was defeated, and, therefore, had no cause to bring the action. (3.) As he was beaten in the

Justice's Court he had no right to appeal. (4.) The account has once before been presented to the town auditors and rejected.

*First.* We think the commissioner may prosecute a delinquent overseer upon his own motion, if, in his judgment, the public interest requires it, that is, if he does so in good faith. The commissioner of highways is charged both with the power and the duty " to give directions for the repairing of the roads and bridges " (1 R. S., m. p 501, § 1), and to enjoin certain duties upon the overeeer, whose duty it is to obey under peril of penalties to be sued for by the commissioner. (Id., p. 504, § 16.) Unless the commissioner can of his own motion sue for these penalties, he is denied the means to enforce his authority  The seventeenth section provides that the commissioner· shall, upon complaint made to him by a resident of the town that the overseer has refused and neglected to perform any of such duties, and upon such resident's giving or offering to give sufficient security to indemnify the commissioner against the costs, forthwith prosecute such overseer for the penalty. Authority implies power to enforce it. The seventeenth section is clearly an additional provision to compel the commissioner to use the power he possesses, not a condition precedent to his possession of the power.

*Second.* That the relator failed to recover in his actions against the overseer does not deprive him of recourse to the town.· The law is not so unreasonable as to require a public officer to guarantee the success of a litigation in which he may, within the scope of his official duties, become involved. In good faith, perhaps not wisely, he sought to exercise a power with which he was clothed. The power to bring the action implies the power to incur its charges. *The People ex rel. Van Keuren* v. *Town Auditors* (74 N. Y., 310) is cited. The difficulty with the relator in that case was, he thought he was lawfully acting'as an overseer of highways in removing an obstruction from a public highway, and he found out on the trial that he was simply an individual trespasser upon the private road of the person who sued him. The court held the town was not obliged to reimburse him for the judgment and expenses he incurred in his law suit with the person whom· he· had no official or personal right to injure. If, in the suit with Hickok, it had been shown that Hickok was not an overseer of highways, either *de jure* or *de facto,* then this relator would have been outside

of the statute and its protection, because he would not have sued an overseer, and the case cited would have been in point.

*Third.* But the case cited is claimed to be authority for the position that the relator, having been beaten in the Justice's Court, had no right to appeal solely upon his own motion. That was held true of an overseer who was the subordinate of the commissioner, and who committed the trespass complained of in obedience to the orders of the commissioner, in the belief that his action was lawful. In such case it was said, that if he could look either to the commissioner or to the town as his immediate superior, he was entitled to indemnity against the natural consequences of having innocently performed their unlawful requests, but having once been beaten he could not enhance the damages by continuing, by appeals, the litigation without the consent of one or the other.

In this case the commissioner is the officer charged with instituting and carrying on this litigation against the overseer. Why he was defeated we do not know, but he was clothed with the power, and hence with the judgment and discretion applicable to the case.

4. The fact that the town auditors had once before refused to audit and certify this judgment, does not defeat the relator's claim. The law says it shall be allowed him; the town auditors are the officers to give effect to the law. They cannot by their perverseness or misjudgment repeal it, and we see no reason why that duty does not remain in full force until it is performed. (*The People ex rel Thurston* v. *Town Auditors*, 82 N. Y., 80.) To reject the bill altogether is a refusal to audit, what the law says shall be allowed. Such a claim differs from the ordinary unliquidated claim in this respect; in the former, the board of town auditors have no jurisdiction of the amount of the claim; in the latter they have. It is true that it is remarked in *People ex rel. Everett* v. *Board of Supervisors* (93 N. Y. 404), that the provision requiring the claim upon the judgment to be presented to the board of town auditors implies the power on their part to reject it altogether, but this remark is *obiter.* If, as we think, the relator had a clear legal right to have this claim allowed him and that right was denied or refused, there is nothing to review upon *certiorari* and *mandamus* is his only remedy. The foregoing views dispose of the relator's other claims adversely to him. They were rejected, and we cannot say, as in the case of the

judgment, that the claims were not judicially examined and disallowed. If so, the relator is bound by the decision of the board of town auditors, unless he brings *certiorari* to review it.

It follows that the relator is entitled to a new trial, costs to abide event.

Judgment affirmed, with costs.