(38 Misc. Rep. 181.)

PEOPLE ex rel. McLENNAN v. GROUT, City Comptroller, et al.

(Supreme Court, Special Term, New York County. June, 1902.)

1. DISTRICT ATTORNEY—EXPENSES—AUTHORITY OF CITY COMPTROLLER.

Under Greater New York Charter, § 1583, providing that all county charges and expenses shall be audited by the auditor of the department, to the extent of the reasonableness thereof. the power and discretion of the city comptroller in auditing county charges of the district attorney relating to the management of the office extends only to "the reasonableness thereof" as to amount, and he is not justified in refusing to audit because he considers the expenditure an incentive to crime or unnecessary.

**2. SAME.**

    The district attorney of the county of New York has power to authorize, within the appropriation allowed his office, an expenditure of $54.30 by a county detective in purchasing liquor for himself and associates at various saloons in a police precinct to procure evidence of violations of the liquor-tax law, on which the district attorney proposed to prosecute a captain of the precinct for neglect of duty.

**8. SAME—PUBLIC POLICY.**

    An expenditure of public money by a district attorney by a county detective in purchasing liquors at various saloons for the purpose of procuring evidence as to the violation of the law is not against public policy.

Application by the people, on the relation of Robert S. McLennan, for writ of mandamus to Edward M. Grout, comptroller, and William J. Lyon, auditor of accounts, of the city of New York. Granted.

William Travers Jerome, Dist. Atty. (Howard S. Gans, of counsel), for relator.

Grout & Carr (William J. Carr, of counsel), for respondents.

GREENBAUM, J. The relator is employed by the district attorney in the capacity of a detective under the designation of "county detective." Among his duties, he is required by the district attorney to seek evidence in support of the prosecution of such crimes as he may be instructed to investigate by the district attorney. Pursuant to instructions emanating from the district attorney, the relator investigated on four successive Sundays in March, 1902, a considerable number of saloons and other places located in the Twentieth police precinct, in which liquor was sold, for the purpose of procuring legal evidence to establish violation of the liquor-tax law of the state of New York, so that he might be in a position to testify of his own knowledge with regard to such violations as he discovered. From the affidavit of William Travers Jerome, district attorney, accompanying the petition, it appears that it had been reported to him "that one Michael E. Foody, a captain in the police department of the city of New York, was willfully neglecting his duty as such public officer, and that he was willfully failing and neglecting to take reasonable means to prevent the violation of the excise laws within his precinct, and to arrest offenders against such laws." The district attorney further avers that such investigation was required to enable him "in the proper performance of his duty as such district attorney to prosecute the said Michael E. Foody for such neglect of duty as he might be found to be guilty of." The relator shows that in the discharge of his duties he visited a number of saloons, and that with certain fellow detectives, engaged with him in similar detective work, he expended for himself and his associates the sum of fifty-four dollars and thirty cents ($54.30) in the purchase of liquors at the various saloons so visited. The details of the moneys so expended were embodied in a statement with the indorsement and certificate of the district attorney approving of and allowing the expenditures thus made, with a request to the comptroller of the city of New York that he audit and direct the payment of the amounts expended by the relator, The

comptroller, upon the report of the auditor of accounts, declined to audit or allow the payment of the bill. The relator therefore asks a writ of peremptory mandamus, directed to the respondents, commanding William J. Lyon, as auditor of accounts, to audit the account of the petitioner, and certify the same to the comptroller for allowance, and commanding the said comptroller to audit and allow the said account, and to direct the city chamberlain to pay the petitioner the aforesaid sum of $54.30.

The main objections of the auditor and comptroller to the audit of the claim are that the district attorney had no authority to make such expenditures; that it is against public policy that public money should be used to induce crimes; that the whole matter is beyond the scope of the duties of the district attorney, who is a prosecuting official, and neither a sheriff nor a police officer; that "the evidence sought by these expenditures seems not to have been sought and used for the purpose of any criminal prosecution, nor any proceeding under the excise law, nor in any proceeding in regard to which the statutes impose any duty or power upon the district attorney"; and, finally, "that the expenditures were unnecessary to procure the evidence sought, even conceding that it was the duty of the district attorney to seek it," as the alleged violations could have been established without the purchase of liquors.

It appears from the petition of the relator that the board of estimate and apportionment did, pursuant to the provisions of the Greater New York charter (section 226), in its last annual budget, provide the sum of $30,000 for the expenditure by the district attorney of New York county "as and for a contingent fund," and that "there remained an unexpended balance of the said funds so appropriated sufficient to permit the payment therefrom of the amount" of the petitioner's claim. Section 1583 of the Greater New York charter provides that "all county charges and expenses and salaries of county officers in said counties and each of them shall be audited and paid by the department of finance out of the fund or appropriation applicable thereto, and the audit of said department in respect to such charges and expenses shall extend to the reasonableness thereof," etc. It is thus apparent that the functions of the comptroller with reference to the auditing the expenses of the district attorney, as county officer, are limited to the passing upon the "reasonableness" of the expenditures. Unless the objections of the comptroller to the bill of the relator as above detailed are founded upon its "unreasonableness," it must follow that no legal reason exists for refusing its payment.

This brings us to the consideration of the grounds upon which the comptroller bases his rejection of the bill.

It must be conceded that the duty and responsibility rest upon the district attorney to conduct all prosecutions for crimes triable in his county. It is clear that it is within the power of the district attorney to do that which is essential to the prosecution of offenders, and that "that is a matter necessarily, to a great extent, dependent upon his judgment. This is so as to all county officers in respect

to the subject to which their duties relate. They take as incidental to them such powers as may be deemed necessary to the proper performance of their official duties." People ex rel. Gardenier v. Board of Sup'rs of Columbia Co., 134 N. Y. 5, 31 N. E. 322, and cases there cited. In the matter here under review, the district attorney, by his affidavit, shows that he was engaged in procuring evidence against a police captain who had been reported to him as willfully neglecting his duty as a public officer, and that such evidence was requisite to enable him to prosecute said officer. There can be no doubt that, if the district attorney had good reason to believe that a public official had committed a crime in his county, it was his right and duty to prosecute the offender. It appears from the petition that, as a matter of fact, a considerable mass of evidence was secured by the petitioner and his associates pursuant to the instructions of the district attorney, which would indicate substantial justification for the course pursued by the district attorney. The recent adjudication in People v. Diamond, 76 N. Y. Supp. 57, by the appellate division, Third department, not yet officially reported, may be cited as authority for the proposition that the kind of testimony gathered by the district attorney in pursuit of his purpose to prosecute Capt. Foody was eminently proper. It should also be borne in mind that the district attorney, as the legal prosecutor in criminal matters, must, if he is expected to properly present for indictment and trial the criminal cases which it is his duty to prosecute, be permitted to exercise his judgment as to the manner in which to prepare his case for trial, and as to the necessity of procuring such evidence as, in his judgment, is requisite to a successful prosecution. He must necessarily be intrusted with a large measure of discretion in the management and preparation of cases that he is expected to prosecute. In such matters it would seem to be a most dangerous and serious precedent to permit another official, to wit, the comptroller, to override the judgment of the district attorney with respect to matters peculiarly within the liberal discretion and judgment of the latter. The administration of criminal prosecutions might be most seriously hampered if the comptroller were vested with such a power of censorship over the expenditures of the district attorney as to permit the former to overrule him as to the kind, extent, and character of the testimony which, in a given case, he considers proper. The district attorney, in my judgment, clearly had power to authorize, within the appropriation allowed to his office, the expenditures of money in the investigations necessary to enable him to determine if a crime had been committed in the county. People v. Board of Sup'rs of Delaware Co., 45 N. Y. 196, and People ex rel. Gardinier v. Board of Sup'rs of Columbia Co., supra.

The comptroller further objects to the use of special detectives, asserting that the district attorney is limited, in procuring evidence, to the police or peace officers. The fallacy of this argument must be apparent, when it appears that, in the case under consideration, the evidence that was procured was intended to be used against a member of the police force for neglect of official duty. This was

therefore peculiarly a case in which it was proper to employ others· than police officers in securing evidence. It would be a sorry situation for the intelligent administration of the criminal law if the district attorney were compelled to be limited to the services of the members of the police force in a case involving the alleged inefficiency or corruption of that body.

With respect to the objection raised "that it is against public policy to use public moneys to induce crime," it may be sufficient to say that the use of the public moneys in this case in no wise appears to· have "induced crime." The testimony of the relator and his associates was designed to establish the crime of a police captain in failing to suppress the unlawful sale of liquors. The purchase of alcoholic beverages is not a criminal act. People v. Smith, 28 Hun, 626, affirmed in 92 N. Y. 665. The enforcement of a law like the Sunday liquor law would become farcical if the public authorities were not permitted to prove violations by the purchase of drinks on the part of persons specially selected to detect violations. Such acts tend not to induce but to suppress crime.

The objection of the comptroller that "the evidence sought by these expenditures seems not to have been sought or used for the purpose of any criminal prosecution, nor any proceeding under the excise law, nor in any proceeding in regard to which the statutes impose any duty or power upon the district attorney," does not seem to me to be well founded. In the Gardinier Case, supra, it is expressly held that the district attorney is authorized to incur expenditures in the conduct of criminal cases, and it is there stated (page 8, 134 N. Y., and page 325, 31 N. E.) that:

"A criminal case arises when the offense is committed, and duties of the district attorney prior to indictment are not limited to issuing subpœnas for witnesses and attending upon the grand jury. The whole subject of inquiry into the commission of crimes in his county is properly within the official' duty with which he is charged."

As to the objection that the district attorney might have been able to establish a case against Capt. Foody without the proof of actual· sales of liquor, it may be said that the district attorney is the legal· officer charged with trying the case in court, and he, as the counsel· of the people, must be held to be the best judge of the character and. extent of the proof that he deems proper in the prosecution of his· case. In my opinion, it is not the province of the comptroller to act as an appellate tribunal, and sit in review upon the judgment of the district attorney with reference to the sufficiency of evidence in a given case, under the authority given to him to pass upon the rea-. sonableness of the expenditures. It is for the district attorney to determine if his case requires proof of the sale of one or two drinks. I take it that the charter was designed to confer upon the comptroller the power to say if the expenditures of an official are directly related to the management of the office of the official incurring the expenditures, and come within the exercise of the fair discretion of that official. The reasonableness contemplated by the statute would seem to refer rather to the moderateness of the charges, than to their neces-

sity, providing it appears that the expenditure clearly relates to a matter connected with the administration of the office incurring the charge.

Following the rule laid down in the case of People v. Board of Sup'rs of Delaware Co., 45 N. Y. 200, I think that the comptroller and the auditor should be compelled to admit the claim to the relator as a legal one, and that, in view of the contention as to a lack of proof as to the expenditures of certain items, the respondents be permitted to exercise their discretion as to the precise amount to which the relator is entitled. The writ will be granted.

Writ granted.