Walter B. Hart, J.
Petitioner moves for an order purportedly pursuant to section 97 of the Membership Corporations Law: 16 authorizing and permitting the Jordan Cemetery Association, Inc. to execute and deliver to the persons furnishing the purchase price of the land of said corporation certificates of indebtedness in the amount of $10,000,000 with interest at the rate of 2% per annum, for the purchase of the real property of said cemetery corporation and for such other and further relief as to the Court may seem just and proper in the premises.”
Section 97 of the Membership Corporations Law provides: “ 1. If a cemetery corporation be indebted for lands purchased for cemetery purposes * * * the directors, by the concurring vote of a majority of their whole number, with the consent of the creditor to whom such indebtedness is owing, may issue certificates under the corporate seal, signed by the president and secretary, for such amount, payable at the times and at the rate of interest agreed on but not to exceed six per centum per annum; provided, however, that there be first obtained from the cemetery board an order approving the issuance of such certi *276 ficates. * * * Such approval shall be given by the cemetery board only if it determines that the amount of certificates proposed to be issued does not exceed * * * the purchase price of the real property as fixed in accordance with section eighty-seven hereof ’
The certificates of indebtedness are to be issued in conjunction with the proposed purchase of cemetery lands, for which a conditional contract has been entered into. The application for authorization to issue the certificates is therefore, as urged by the Attorney-General, premature, since it does not appear that the cemetery corporation is presently ‘ ‘ indebted for lands purchased for cemetery purposes.” Nor may the court in any event at this time authorize the issuance of the certificates. This function has been invested by the statute in the Cemetery Board which, by the statute, is directed to grant such approval where the purchase price of the real estate has been approved by the Supreme Court in accordance with .section 87 of the Membership Corporations Law. If after such approval by the court the Cemetery Board arbitrarily refuses to authorize the issuance of the certificates, such determination may, pursuant to section 106 of the Membership Corporations Law, be reviewed by the Supreme Court in an article 78 proceeding. While the prayer for relief did not specifically request the court to pass on the reasonableness of the purchase price of the proposed contract, the approach to the issues presented necessarily involves that issue and was fully litigated. The court, therefore, under the prayer for “ such other and further relief ” may consider the issue of the reasonableness of the purchase price. As was stated by the Court of Appeals in Thompson v. Erie Ry. Co. (45 N. Y. 468, 476): “ We have held, in The People ex rel. Johnson v. Supervisors of Delaware County [45 N. Y. 196], that, under such a clause in the notice of motion, relief may be given other than that specifically asked for, and to such extent as is warranted by the facts plainly appearing in the papers on both sides.” To the same effect is Hunter v. Fiss (92 App. Div. 164, 166) where the court said: “ That notice was broad enough to afford the defendant any affirmative relief to which he is entitled.”
Gerald Adler, Director of the Division of Cemeteries of the Department of State, testified that the Cemetery Board, consisting of the Secretary of State, the Attorney-General and the Commissioner of Health had many meetings with respect to the petitioner’s application; that no determination was arrived at since “ it was concluded that the wise approach would be for them [petitioner] to make an application to the court and that *277 was the proper approach.” The court is in accord with that statement.
With respect to the fixation of the fair and reasonable value of the land, the statute (Membership Corporations Law, § 87, subd. 3) provides: “ 3. No cemetery corporation, in purchasing real property hereafter, shall pay or agree to pay more than the fair and reasonable market value thereof. The terms of the purchase, including the price to be paid and the method of payment, shall be subject, upon notice to the cemetery board, to approval by the supreme court in a district where any portion of the land is located. In determining the fair and reasonable market value, the court may tahe into consideration the method by which the purchase price is to be paid.” (Emphasis supplied.)
Since it has been established at the hearing that a period of time variously estimated at 50 to 90 years must pass before the investment with interest may be recouped and no mortgage or other security may be given by a cemetery corporation, the only method available for the consummation of the transaction is the issuance of certificates of indebtedness.
The crux of the issue in dispute is the amount of certificates which should be eventually authorized and the interest that they should bear. These reflect “ the method by which the purchase price is to be paid.” There is no dispute that the proposed price of approximately $1,000,000 to be paid in cash to the vendors and which is to be advanced by the sponsors of the petitioner, is fair and reasonable. The proposal that they in turn receive $10,000,000 in certificates of indebtedness with 2% interest is opposed by the Attorney-G-eneral as excessive. The court therefore is called upon to determine what is fair and reasonable under all of the circumstances.
Involved in the transaction is the sale of the fee by one existing cemetery corporation and the burial rights therein owned by three other corporations. The land in question consists of 156 acres in Staten Island, dedicated to cemetery purposes and 1 acre of undedicated land necessary for access purposes. While the dedication of the land as a Jewish cemetery occurred over 50 years ago, they have not been developed or used for that purpose. They are wooded; some are swampy while others have hills and depressions therein. The present owners lack the financial means to develop the lands for cemetery purposes. When the Verrazzano Bridge over the Narrows is completed the usefulness of this area will be considerably enhanced. As appears from the testimony of Mr. Adler there is a need for more Jeyfish burial space, that “ it wóuld help the Jevnsh popu *278 lation * * * and it would keep prices lower if there were another Jewish cemetery in the five boroughs * * *. There are a few out in Queens. Their prices are going sky-high.” There have been no applications for the creation of new cemeteries since the passage of various amendments to the Membership Corporations Law in 1949. In the opinion of Mr. Adler there will be none unless the State ‘ ‘ started to make them or unless eleemosynary institutions or religious corporations like the Catholic Church ’ ’ did it; that he knew of “no other technique other than incentive capital.”
The Cemetery Board in the preliminary review of the petitioner’s application concluded that the cemetery acreage would yield a total of 219,800 graves at a maximum (not allowing for roads or an area for an administration building). At the present prevailing rate of $100 a grave the total gross sales would amount to $21,980,000. From this must be deducted 15% to be applied to the temporary maintenance fund and an additional 15% for a permanent maintenance trust fund. (While the statute requires only 10% for this trust fund petitioner has agreed to contribute 15%.) In addition, there is concededly a 25% selling cost to be deducted. After reducing by 15 to 20% the area of the cemetery for the erection of roads and an administration building the most that would be available for the payment of certificates of indebtedness would be $8,500,000. It is also uncontroverted that to clear and level the lands, drain the swamps, build the roads and administration facility, $2,500,000 would have to be expended. Most of these funds will have to be advanced by or on the credit of the sponsors of this project without interest or security and no certificates of indebtedness are to be issued therefor. These advances are to be repaid out of the future sales of the plots. The sponsors, in developing and managing the cemetery propose to do so without salary, except for a nominal salary for the president. Concededly, for the first 15 years nothing could be paid on account of interest or principal. During the next succeeding 10 years $1,000,000 at the rate of $100,000 a year might be available for that purpose. It is further conceded that a million dollars invested at the present time at 6% interest compounded annually for 25 years would, with the principal amount to $3,344,000. So that if at the end of that time only $1,000,000 was repaid by the Cemetery Corporation, there would still be due $2,344,000. The parties to the proceeding agree that it would take at the very least an additional 25 years to pay the balance with interest compounded at 6% per annum from the proceeds of the sale of the burial plots so that this sum of $2,344,000, with accumu *279 lated interest, will amount to a sum in excess of $7,500,000. Of course, during this second 25-year period, as the certificates are retired, the corpus upon which the interest has been computed, is being amortized. There has been testimony, however, that it will take 90 years rather than 50 to sell all of the lots which will be eventually available. Moreover, there is a great deal of risk attendant upon the venture. No security in the form of a lien or mortgage is available. As each plot is sold, the equity in the land becomes depleted. The contention of the Attorney-General that interest should not be compounded is without merit since, with any other investment, as the interest accrued and became available it could be reinvested.
In view of all of these circumstances, the court concludes that the fair and reasonable value of the property, if paid for in cash is $1,000,000. Since it is to be paid by certificates of indebtedness, having recourse to this “method of payment” the fair and reasonable market value is $8,000,000 with interest at the rate of .0063 (which will yield approximately $50,000 or 5% of $1,000,000). It might be observed in passing that the sponsors of the venture are not primarily concerned with the interest yield of the certificates, but are investing primarily for long-term capital gains. Under the Internal Revenue Code such may not be available unless the certificates carry some provision for interest.
In arriving at its determination the court concludes that the purposes of the 1949 statute, rather than being subverted, will be safeguarded. A strong and enhanced permanent maintenance trust fund will be established. While the statute was not primarily intended to control or regulate the price of plots, which was left to the law of supply and demand, the development of this cemetery by the petitioner should tend to prevent exorbitant increases if more burial ground is not made available. The contention by the Attorney-General that the certificates will cause an inflation in the price of the'graves is, therefore, without merit. Moreover, pursuant to sections 82-a and 84 of the Membership Corporations Law, the cemetery corporation must file a schedule of the prices of the plots with the Cemetery Board and post them conspicuously in its own offices. If any abuses with respect to the prices appear in the remote future, the State may take appropriate steps to remedy the condition.
Accordingly, the motion is granted to the extent that the contract for the purchase of land at $1,000,000 in cash is approved, and if the payment is to be made by the method of certificates of indebtedness, then in the amount and at the rate of interest indicated.