## MIAMI CONSERVANCY DISTRICT v BADEN et

Ohio Appeals, 1st Dist, Butler Co

No 643.   Decided Feb 14, 1935

O. B. Brown, Dayton, and John F. Neilan, Hamilton, for plaintiff.

Paul A. Baden, Hamilton, for defendant.

## OPINION

By HAMILTON, J.

The first question for consideration is the right of the relator to maintain the action. In other words, is there a cause of action in the relator against the defendant, the Budget Commission of Butler County, Ohio?

It may be inferred from the petition that the relator levied an assessment against the City of Hamilton, the City of Middletown, and the County of Butler, as political entities, under the statute known as the "Conservancy Act of Ohio," §§6828-1 to 6828-79, GC, inclusive.   Pursuant to this levy, the said political entities levied an assessment on the taxable property therein to meet the levy of the conservancy assessment; that the assessments by these political entities for the year 1934 were partly delinquent; that the taxing authorities in said districts certified to the Budget Commission the 1935 levy and included therein the delinquencies of 1934.   The delinquencies were included as a part of the regular annual levy installment for the year 1935, thus making a relevy for delinquencies of 1934.   The Budget Commission did not include said delinquencies in its budget for 1935.   The relator seeks to compel the Budget Commission, by this action, to include as a part of the regular annual installment the delinquencies of 1934.   Can the relator maintain such an action directly against the Budget Commission?

Such an action has no precedent, at least none has been called to the attention of the court, and we have been unable to find one.

The relator claims his right under and by virtue of §6828-70, GC.   This section provides:

"The performance of all duties prescribed in this act concerning the organization and administration or operation of the district may be enforced against any officer or against any person or corporation refusing to comply with any order of the board by

mandamus at the instance of the board or of any person or corporation interested in any way in such district or proposed district. And the board may institute such proceedings in the Court of Appeals in the first instance."

The section concerns the organization, administration, and operation of the district, and how official duties may be enforced. It would require a strained construction to find that the collection of delinquent taxes by a subdivision comes within the meaning of the term "organization and administration or operation." The section further provides that performance may be enforced against any officer or any person, or corporation refusing to comply with any order of the board. Nowhere in the "Conservancy Act" is a "Budget Commission" referred to, or any duties enjoined upon one concerning the district.

There is no allegation in the petition that the Conservancy Board has made any order, or has the power to make any order to the County Budget Commission. The claim of the Conservancy District is for the assessments against the political entities. The act does provide for enforcing the collection of unpaid taxes by the Commission as against individuals by compelling the County Treasurer to collect the same, or it may proceed directly against the individual to collect the same. In so far as enforcing the payment is concerned, the political entity, in this case the City of Hamilton, City of Middletown, and the County of Butler are individuals. It may be that such political entities have no property on which the Conservancy District could have a lien for the debt due it by virtue of the assessment. The law provides for enforcing a debt against a political entity, when relief is sought against that political entity.

We, therefore, find no authority in this section for proceeding directly against the Budget Commission, which is but the fiscal agent for the political entities, as regards the assessment, since the assessment is outside the ten mill limitation. If it is necessary that the assessment go through the hands of the fiscal board, the real party in interest would be the political entity. Whether or not it is necessary that the Budget Commission act concerning the certified levy, it is unnecessary here to decide. The fact remains, whatever its duties are, the right to enforce the same as against the Budget Commission lies in the political entity issuing the order, in other words, certifying the levy.

We know of no law directly authorizing the compelling of the collection of delinquent taxes by mandamus.

The law does provide ample power and the legal method of collecting delinquent taxes. True, the Conservancy Board has a right to compel the payment of the assessments levied against the political entities, but it certainly must proceed against the debtor. We have here the debt of the City of Hamilton et, by virtue of relator's assessments, to the Conservancy District.

We may state here that if the action is to collect a debt, then there is a misjoinder of causes of action, misjoinder of parties, and want of necessary parties, since there are three separate debtors, the City of Hamilton, City of Middletown, and the County of Butler. No point is made of this, so we pass that proposition. However, if it should be claimed that this proceeding is not an action to collect the debt, then the relator has no standing in court.

Considering the question as a debt to the Conservancy District from the City of Hamilton, we have this situation:—The debt is owing by the City, and in 1934 the levy was duly certified for collection. Taxes are delinquent leaving a balance due the City of Hamilton on the tax duplicate. The Conservancy District says to the City of Hamilton: "We will relieve you of this collection and will proceed to compel it to be done by direct action for your benefit. It may be you would desire to liquidate the assessment debt by a bond issue or discharge it from surplus funds from the sinking fund of the city or other method, but we think we should have the Budget Commission of Butler County do this for your benefit, since we may get a part of this collection in payment of a debt you owe to the Conservancy District. While it is your right to mandamus the Budget Commission, we have concluded to do it for you."

Carried to its logical conclusion, it would mean that in the case of the non-payment of the taxes by an individual, who has been assessed, the Conservancy District could, by mandamus, compel the individual to proceed in a certain way to get the money to pay the assessment. This, of course, presents an absurd situation, but illustrates what the relator is endeavoring to do in this case.

The duty of the Budget Commission is to the City of Hamilton and not to the Conservancy District. If the City of Hamilton does not pay the Conservancy District, the district has its relief against the city.

It is not claimed that there is any provision in the Conservancy Act to sustain

this action except §6828-70, GC, which we have shown cannot apply, unless the officer sought to be mandamused fails to comply with an order of the Board concerning the organization, administration, or operation of the district. As heretofore stated, no such order was ever made, and no binding order could be made to the Budget Commission, as it is not mentioned in the act.

The defense is made that the Conservancy District had a plain and adequate remedy at law for the collection of the assessment debt from the political entities, and this is true. The relator has not exhausted that remedy at law, as indicated by the foregoing in this memorandum. We have the anomalous claim in the brief of the relator that the statute cited, showing an adqeuate remedy at law, concerns only general taxation, and an appeal to the Tax Commission of Ohio does not apply to the proceedings under this Conservancy Act. In the next breath in the brief, counsel goes outside the Conservancy Act to the general laws in its endeavor to justify this action. The right, if any, to maintain this action must be under statutory authority outside the Conservancy Act, and the relator would be therefore bound to follow the steps required thereunder and appeal to the Tax Commission of Ohio.

The answer to the question is this:—That while the Conservancy District can enforce the collection of the assessment due it from the City of Hamilton et, by an action against it, it may not, by mandamus, compel the method of collecting the money to pay the assessment debt in the absence of a judgment against the city. Much less may it maintain this action to compel the Budget Commission to carry out the certificate made by the city, with which certification the relator had no part.

The conclusion is, that the relator has no cause of action in it as against the Budget Commission, respondent in this case.

The writ is denied.

ROSS, PJ, concurs.
MATTHEWS, J, dissents.

### DISSENTING OPINION

By MATTHEWS, J.

I find myself unable to concur in either the reasoning of or the conclusion reached by the court.

Supplementing the express averments of the pleadings by conclusions of law and matters of which the court takes judicial notice, the case presented, which the majority of the court has concluded lacks essential elements for the issuance of a writ of mandamus, is as follows:

Immediately following the disastrous flood of 1913, the inhabitants of the Big Miami River Watershed petitioned the legislature for some authority to protect themselves against a recurrence of such a calamity. This resulted in the legislature enacting the "Conservancy Act of Ohio," which became §§6828-1 to 6828-79, GC, both inclusive, which thereby took its place in the great body of laws to be interpreted and enforced as a part of the whole legislation of the state. This act was declared constitutional in the case of **Miami County v Dayton**, 92 Oh St, 215. In accordance with the terms of that statute, the jurisdiction of the Court of Common Pleas was invoked for the establishment of a Conservancy District, which court, after due hearing, granted the prayer of the petition and created a district under the name of the "Miami Conservancy District," which, under the terms of the law (§6828-6, GC) became "a political subdivision of the state of Ohio, a body corporate with all the powers of a corporation" with "perpetual existence, with power to sue and be sued; to incur debts, liabilities, and obligations; to exercise the right of eminent domain and of taxation and assessment as herein provided; to issue bonds and to do and perform all acts herein expressly authorized and all acts necessary and proper for the carrying out of the purposes for which the district was created."

By §6828-65, GC, police power was expressly conferred.

This decree, establishing the district, was filed with the secretary of state and copies thereof with the county recorders in the district.

In accordance with the Act (§6828-8, GC) the court appointed three directors, to whom was confided by the law full and complete authority to employ all the necessary agents to prepare the plans for the establishment of the safeguards against floods, and to execute the work of creating safeguards, with all the power usually conferred upon administrative officers of political subdivisions.

To determine the benefits accruing to the real estate from the execution of the plans, the act provided (§6828-26, GC) that three appraisers should be appointed by the court "to appraise all benefits and damages accruing to all lands within or without the district by reason of the execution of the official plan."

And by the next section of the Act, it was specifically provided that: "The Board of appraisers shall also appraise the benefits and damages, if any, accruing to cities, villages, counties, townships, and other

public corporations, as political entities, and to the state of Ohio."

Appraisers were appointed by the court.

After this appraisement was made, the law required that it be filed in court and that notice thereof be given with the right to except within the time prescribed. This was done.

By §6828-33, GC, it was provided that if the court was satisfied that the estimated cost was less than the benefits appraised, then the court should approve and confirm said appraisers' report and "such findings and appraisals shall be final and incontestable." The court approved the appraisers' report.

The law provided for an appeal from the decree approving the appraisal. No appeal was taken.

Under the subheading of "Financial Administration" was found provisions for financing the work.

By §6828-45, GC, the board of directors was authorized to levy assessments for a bond fund, based on the benefits disclosed by the report of the appraisers.

By §6828-47, GC, the board of directors was authorized to issue bonds not to exceed 90% of the total amount of the assessments, exclusive of interest, maturing at annual installments within thirty years, and it was provided in that section that: "A sufficient amount of the assessment shall be appropriated by the board of directors for the purpose of paying the principal and interest of the bonds and the same shall, when collected be set apart in a separate fund for that purpose and no other." And also: "It shall be the duty of said board of directors in making the annual assessment levy, as heretofore provided, to take into account the maturing bonds and interest on all bonds, and to make ample provision in advance for the payment thereof."

In addition to the power to levy for the purpose of paying the construction bonds, the board of directors by §6828-48, GC, was empowered to levy an assessment for the purpose of defraying the current expenses of the district in the maintenance of the equipment constructed by it, and upon the petition of the owners of 25% of the acreage or value of the lands in the district filed with the clerk, the court was authorized to examine the maintenance assessment and to readjust it according to the appraisal of benefits. §6828-49, GC.

By §6828-50, GC, it was made the duty of the board of directors to "determine, order and levy the part of the total assessments levied under this act, which shall become due and collected during each year

at the same time that state and county taxes are due and collected, which annual levy should be evidenced and certified by said board not later than September 1st each year to the auditor of each county in which the real property of said district is situate."

And it was provided that in the assessment book, provided for that purpose that: "In case of a city, county, village, or township, the names of individual owners need not be given, but only the name of the city, county, village, or township." And it was also provided that the assessment book or certified copies thereof should be forwarded to the county auditor for his use and to the county treasurer for his use, and that: "It shall be the duty of the auditor of each county to receive the same as a tax book, and to certify the same as other tax records to the county treasurer of his county, whose duty it shall be to collect the same according to law." And that upon failure of the board of directors to certify the annual levy to the auditor, it shall be the duty of the auditor of the county, notwithstanding, to make and complete a levy "of the taxes or special assessments necessary."

Other sections of the act made it the duty of the county officers to proceed in the usual way to collect the assessment or taxes and forward the same to the treasurer of the Conservancy District, and that there should be an assessment of a penalty of 8% for delinquency in the payment of taxes or assessments.

Sec 6828-55, GC, prescribed the duties of the political subdivisions as to assessments in this language:

"Whenever, under the provisions of this act, an assessment is made or a tax levied against a county, city, village, or township, it shall be the duty of the governing or taxing body of such political subdivision, upon receipt of the order of the court which established the district, confirming the appraisal of benefits and the assessment based thereon, to receive and file the said order, and to immediately take all the legal and necessary steps to collect the same. It shall be the duty of said governing or taxing body or persons to levy and assess a tax, by a uniform rate upon all the taxable property within the political subdivision, to make out the proper duplicate, certify the same to the auditor of the county in which such subdivision is, whose duty it shall be to receive the same, certify the same for collection to the treasurer of the county, whose duty it shall be to collect the same for the benefit of the conservancy district, all of said officers above named being au-

thorized and directed to take all the necessary steps for the levying, collection and distribution of such tax."

And, finally, by §6828-70 GC, it was enacted that:

"The performance of all duties prescribed in this act concerning the organization and adminstration or operation of the district may be enforced against any officer or against any person or corporation refusing to comply with any order of the board by mandamus at the instance of the board or of any person or corporation interested in any way in such district or proposed district."

The relator is the Conservancy District, created by compliance with the provisions of this act, charged with the duties and possessed of the powers conferred by its provisions. The respondents are the Prosecuting Attorney, Auditor, and Treasurer of Butler County, who, by virtue of their offices, constitute the Budget Commission of said county.

In the appraisal of the benefits the appraisers found that the County of Butler, City of Hamilton, and City of Middletown, as political entities, were benefited by the execution of the Conservancy plan, and such appraisal was approved by the court and became final and incontestable.

The board of directors of the Conservancy District certified the annual installments due for the year 1934 and also the delinquencies of the Conservancy assessments against said political entities to the defendants, individually and as members of the Budget Commission. The three political entities each adopted a budget, including the annual installments for the year 1934 and also the delinquencies, and these budgets were laid before the Budget Commission by the county auditor. To this point, there had been complete cooperation by all the officials and no one had questioned in any way the validity of the assessment. However, the Budget Commission failed and refused to approve the inclusion of the delinquencies, and, by this action, the relator seeks to compel the Budget Commission to approve the item of delinquencies and to certify the same as required by law.

These facts being undisputed, the question presented is purely one of law.

My brethren say that the relator has not presented a case entitling it to a writ of mandamus. As I understand their reasoning, their conclusion is based upon the following legal propositions:

FIRST: That the Conservancy District has no authority to proceed directly against the Budget Commission. This result is reached by them by a consideration of §6828-70, GC, leading to the conclusion that "organization and administration or operation of the District", as used therein, does not include the collection of taxes, and also that the section was limited to authorize mandamus only for the enforcement of an order by the board, and that there was no allegation in the petition that any order had been made by it. The conclusion is also based upon the proposition that the Conservancy Act conferred no power upon the Board of Directors to make an order directed to the County Budget Commission.

SECOND: That the power of compelling the Budget Commission to certify the levy rests exclusively with the political entities, charged with the duty of collecting and paying the assessment.

THIRD: They say that mandamus is not the remedy for the collection of delinquent taxes, and seem to say that the relator is limited to an ordinary action against the political entity, to recover a money judgment.

FOURTH: That the Budget Commission owes no duty to the relator and that, therefore, this action cannot be maintained.

FIFTH: Finally, that in addition to the relator having an "adequate remedy at law for the collection of the assessment debt from the political entities", it has failed to exhaust its administrative remedy by appeal from the County Budget Commission to the Tax Commission of Ohio.

I shall discuss these grounds of the decision in the order stated, although it is apparent that they impinge upon one another.

1. Is the relator empowered by §6828-70, GC, to resort to the writ of mandamus to enforce the collection of taxes? The language of the section is: "The performance of all duties prescribed in this act concerning the organization and administration or operation of the district may be enforced against any officer or against any person or corporation refusing to comply with any order of the board by mandamus. * * *."

It will be observed that the duties enforceable by mandamus must concern "the organization and administration or operation of the district." Those words in their ordinary acceptation seem to embrace every conceivable subject-matter of activity relating to the Conservancy District.

The primary definition of "administration," according to Webster is: "Act of administering; government of public affairs; the service rendered or duties assumed in conducting affairs; conduct of any office or

employment; direction; management." And with reference to "government" he quotes Holland as defining "administration" as follows: "The exercise of political powers within the limits of the constitution," as "the total concrete and manifoldly changing activity of the state in particular cases." "The persons collectively who are intrusted with the execution of laws and superintendence of public affairs."

In Bouvier's Law Dictionary, 3rd Revision, 138: "Administration of Government" is said to be "the management of the executive department of the government. Those charged with the management of the executive department of the government."

The Conservancy Act itself discloses that the legislature intended to include financial and taxation matters within the definition of administration as used in the act. All of the provisions with reference to the levying of taxes will be found in the act under the heading "Financial Administration."

The use of the word "operation," together with the description of the subject matter of the "district" also emphasizes the all-inclusive intent of the legislature, both as to time and as to space.

"Operation" is defined by Webster as "Act, process or effect of operating * * * working; agency; exertion of power or influence; * * * method or way of operating or working; mode of action or form of activity."

Without any evidence within the enactment itself of the meaning of the words used, it seems to me that the ordinary rules of construction would require the court to hold that wherever there was a mandatory duty prescribed in the act, regardless of its character, performance of that duty could be enforced by mandamus, and when this conclusion is strengthened by the use of the same term in other provisions of the act, clearly including the particular subject-matter, the meaning would seem to be beyond the possibility of doubt.

If the governing body of the corporation created to exercise the powers conferred upon the body corporate has not the authority to administer one of the most vital of its powers then who has?

But it is said that the Board has made no order which has been violated.

Sec 6828-70, GC, clearly implies that the Board has authority to make an order respecting all duties prescribed in the act, and the other provisions of the act clearly indicate that it was the intention of the legislature to place the entire authority for the administration of every phase of the government of the Conservancy District in the Board of Directors.

The body corporate created by the act was empowered to do many things, and was authorized to do all acts necessary and proper for the carrying out of the purposes for which the district was created, and for executing the powers with which it is invested. (§6828-6, GC). And by the same section it was given the power of taxation and assessment. The Board of Directors was created to exercise the power of the body corporate, and it would seem clear that under the general provisions of the act wherever an officer within the district owed a duty imposed by law, the power to enforce that duty would rest in the governing body of the corporation. As soon as the benefits were determined and the original assessment levied, a duty was imposed upon all the taxing officials in the district in relation thereto, and by §6828-47, GC, the Board was specifically authorized to issue bonds and levy a complete assessment for the payment of the entire issue, and by §6828-50, GC, it was specifically authorized to make annual levies to liquidate the complete assessment; and, in the process of making the annual levy, to certify the same to the county auditor, who was expressly charged with the duty of proceeding to impose the necessary tax to raise the money with which to pay the levy, in the event the same was against a political subdivision.

The petition in this case alleges that the Board did certify to the Directors the levy. Coming from the Board, having authority to do so, it seems to me clear that that must be regarded as an order within the meaning of the term as used in §6828-70, GC.

It is also said that the Budget Commission is not embraced within the class against which the Board is authorized to proceed by mandamus. The section authorizes the writ against "any officer or against any person or corporation," the respondents in this case are the Prosecuting Attorney, Auditor, and Treasurer of Butler County. Surely, they are officers within the meaning of the section, and the fact that they are required to co-operate as a Budget Commission does not destroy the fact that they are acting in their capacities as such officers.

2. Does the power to enforce the performance of official duties rest exclusively with the political entity charged with such duties, whose officer refuses to proceed? That seems to be the position taken by the majority.

By the express terms of §12287, GC, the writ may issue "on the information of a party beneficially interested." In 25 O. Jur., at 1163, it is said:

"There is a difference of opinion in the authorities generally as to the right of a citizen to enforce by mandamus a purely public right, where the people at large are the real party in interest. That he may do so in Ohio is the rule established by the Supreme Court. His interest as a citizen is sufficient to sustain the action."

Many cases are cited in support of the text. And, at page 1160, it is said:
"An incorporated village is a proper party, as relator, in an action for a writ of mandamus to compel the county auditor to enter a mun'c'pal tax upon property of territory newly annexed to the village."

That the political subdivision having a special interest may invoke the remedy of mandamus in relation to that duty is the general rule. 18 R.C.L. 324. At 325, the general rule is set forth that even a private person may have recourse to mandamus to compel the performance of a public right or duty when he has a special interest. In Ohio, the interest of a taxpayer is sufficient for that purpose.

While the political entities involved in this case owe the duty of collecting and paying the assessment, they can only proceed through their officers, and to say that the remedy of mandamus is only available to them, is to say that there is no such remedy at all, because they could only act through the officers against whom the remedy is sought.

3. It is said in the majority opinion that "we know of no law directly authorizing the compelling of the collection of delinquent taxes by mandamus."

If it is meant by this that the writ is not available against a private citizen to require him to pay his taxes, I can concur in it without hesitation. But the connotation implies that the officers of a delinquent political subdivision cannot be proceeded against by mandamus to compel it to perform its duty. In that implication, I cannot concur. Numerous cases are on record in which mandamus has been used for that very purpose.

The general rule is stated in 25 O. Jur., 1123, as follows:

"According to the weight of authority, the regular and appropriate mode of enforcing the performance of the duty to collect taxes is by the writ of mandamus."

And at page 1124:
"Mandamus is generally considered an appropriate remedy to compel the levy of taxes to pay indebtedness arising out of county bonds."

And at page 1127:
"A county auditor may be compelled by mandamus to place on the tax lists of the county the rate required by law for taxes for state purposes."

In 18 R.C.L., it is said at page 281:
"It seems that a simple contract debt cannot be made the basis of an application for mandamus to compel the levy of a tax by a municipal corporation for its payment while it retains its form as a simple debt, unless it was contracted under a law or vote authorizing such proceeding to enforce its payment. A state law, authorizing a city to levy an annual tax to be paid on the debt of a city is, however, imperative; and a mandamus should be issued to compel the imposition of the tax."

Many cases are found in the Ohio reports of mandamus to compel the assessment of taxes. By the same reasoning that authorizes mandamus to compel the assessment of a tax, the writ to compel the collection of taxes is authorized.

The earliest case in Ohio on the subject is that of State ex v Commissioners of Clinton County, 6 Oh St, 280. There are many since then. A bondholder may have recourse to mandamus to compel the levy of a tax. Gaynor v City of Butte, (75 Mont. 279) 51 A.L.R. 966.

In this connection, it should be borne in mind that this case is not to compel the political entity to proceed against their delinquent taxpayers. So far as the relator is concerned, the delinquency is on the part of the political entities. They have failed to pay the amount of their annual assessments, and, by reason thereof, the present assessment has been augmented by their prior delinquencies. The case relates to the current assessment and the duty of the members of the Budget Commission with reference thereto.

4. It is stated in the majority opinion that the Budget Commission owes no duty to the relator.

The members of the Budget Commission are public officials. Whatever duties are imposed upon them by the law, they owe not to any specific person or corporation, but to the entire public. If the duty was owing only to the specific body corporate, unenforceable by anyone else, there would be slight protection against non-feasance

in office. The very purpose of a writ of mandamus is to place in the hands of anyone, having a special interest, a means for compelling the performance of a public duty.

There runs through the opinion of the majority, however, the implication that the Conservancy Act stands apart from the great body of the law, and that unless there is a specific provision in the act, the subject-matter has no existence so far as the relator is concerned. That is not my understanding of the relation one statutory provision bears to another. If it was, then every law passed, no matter how trivial its subject-matter, would have to create a complete legislative, executive, and judicial department in order for it to be of any effect. Every legislative enactment takes its place in the entire system of laws, and is supplemented by all other relevant law on the subject.

In my opinion, however, the Budget Commission is referred to in the Conservancy Act by the general reference to the taxing officials.

5. It is also said that the relator failed to exhaust the administrative remedies by not appealing to the Tax Commission of Ohio from the refusal of the defendants to approve this tax levy.

It will be found by reference to §5625-28, GC, that an appeal from the Budget Commission of a county to the State Tax Commission is limited to appeals by the taxing authority of any subdivision, and, by §5625-1, GC, "taxing authority" is defined to mean: "In the case of any county, the county commissioners; in the case of a municipal corporation, the council or other legislative authority of such municipal corporation; in the case of a school district, the board of education; and in the case of a township, the township trustees."

Nowhere in the law is found any provision anywhere authorizing a Conservancy District to appeal from the order of the Budget Commission. No administrative remedy has been provided to which the relator could resort for relief. It should be said in this connection, however, that the Tax Commission of Ohio has intervened in this case, and has taken the position that the action of the Budget Commission of Butler County was in accordance with law. It is manifest that an appeal to it by the relator would be of no avail.

For these reasons, I am unable to concur in the reasoning of the majority.

The question persists as to whether or not the relator is entitled to a writ of mandamus against the respondents.

Undoubtedly, the subject-matter is a

mandatory levy. These political entities became bound at the time of the original assessment to pay a certain amount of money to the relator, to be used by it in payment of a bond issue, and in these bonds, the relator, who represented all the component parts of the district, pledged itself to proceed according to law "for the collection of the principal and interest of said assessments and the application thereof to the payment" of the bonds, "and for the levying of such other and further assessments as are authorized by law and as may be required for the prompt payment" of the bonds.

Under the constitution, this part of the levy was to pay a sinking fund charge. §11 of Article XII of the Constitution. The provisions of the Conservancy Act in that respect were required by the constitution itself. In addition, there was included an item in the levy for maintenance of the Conservancy District. This was made in conformity to the provisions of the Conservancy Act. It was mandatory upon the political entities to make the levy, and both items of the levy are by §2 of Article XII of the Constitution outside of the ten mill limitation, and by §5625-23, GC, it is made the mandatory duty of the Budget Commission to approve them without modification.

It is contended, particularly by counsel for the Tax Commission of Ohio, that to require a levy including prior delinquencies would result in such inequality as to render the levy invalid as violating the due process clause of the State and Federal Constitutions.

In considering this question, it should be emphasized that we are not concerned here with the delinquencies of the taxpayers of the political entities. The delinquency with which we are concerned is that of the political entities in their duty to the relator. If the relation between the political entities and their taxpayers is such as to render it impossible for them to make the levy, because of constitutional limitations, or otherwise, the respondents should have so answered to the alternative writ. They have made no such defense.

Sec 12292, GC, provides for an answer by the defendants "as in a civil action."

The political entities themselves do not seem to have found any impediment to the levying of this assessment. They have included the items in their budgets and the levies are not made simply because the respondents have failed in the non-discretionary duty of approving the items.

Of course, equality in bearing the burden

of taxation of all sorts is the ideal of the law, but as a practical matter it has been found unattainable, and there is no constitutional provision requiring exact equality. By imposing penalties for delinquencies and by providing for their collection with penalties and transfer to other funds, notwithstanding the payment of the debt for which they were assessed, the state has provided the remedies by which to equalize the burdens of taxation as far as it is humanly possible. Generally speaking, if the taxing authorities levy a tax, it will not be disturbed as lacking due process of law, unless it is so unequal and discriminatory as to be manifestly spoliation and confiscation under the guise of taxation. There is no such issue in this case. All that was said (and this only by way of argument and not by pleading or proof) is, that some of the taxpayers of the political entities have failed to pay their taxes, and that this levy is larger because of such delinquencies. Even so enlarged, it is not suggested that the taxpayers would, by reason thereof, be required to pay more than the original appraisal shows they were benefited by the establishment of the Conservancy District. But even so, requiring faithful taxpayers to bear a larger burden on account of the default of others does not violate any constitutional provision. There is no novelty in that situation.

In 1 Cooley on Taxation, 566 and 567, it is said:

"The provision requiring uniformity and equality of rate does not prevent the passage of a 'compromise law' for the clearing up of arrearages, where delinquent taxes have accumulated beyond the ability of owners to pay or of the state to enforce. Nor is the rule of uniformity infringed by a statute authorizing the levy and collection of state delinquent taxes upon and from all the property of the county—making each county liable for delinquencies in the state tax apportioned to it. There is no violation where, after the lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, an additional levy is made upon all property in the district because of the failure of some of the taxpayers to pay their portion of the first levy."

A case involving a law quite similar to the Conservancy Law of Ohio is that of Norris et v Montezuma Valley Irr. Dist. et, 248 Fed. 369. The court held in that case, as stated in the third syllabus:

"A statutory obligation of a municipal or quasi municipal corporation to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt, is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied actually to pay the debt."

And at page 374, the court said:

"It is supposed that the interest and penalties exacted from those who delay prompt payment and the summary means of enforcement of collection will somewhat equalize the burden that falls on those who pay promptly, but any final unpaid balance is a loss that falls uniformly upon the entire body of taxpayers. It is a common provision in the state constitutions and statutes that assessments or levies for taxation shall be uniform upon the same class of subjects, or by value. Such provisions are not violated, when, after the lapse of a reasonable time, and after reasonable efforts have been made to collect the first levy, an additional levy is made upon all the property in the district because of the failure of some of the taxpayers to pay their portions of the first levy."

This same question was before the Supreme Court of the United States in the case of Kadow et v Paul et, Commissioners, 274 U. S. 175. I quote the syllabus:

"1. Section 4439-6 of the Laws of Washington, 1923, which provides a supplemental assessment on the lands within drainage districts to make up any deficiency resulting from the elimination of avoidance of any original assessment, does not intend that the assessment of any land owner may thus be increased beyond the benefits derived by him from the improvement.

"2. Where part of the land in a special improvement district fails to pay its assessment and is appropriated and sold, any deficit thus arising may constitutionally be met by additional assessments on the lands of the district, provided the law operates uniformly as against all parts of it and the assessments, of the respective land owners are not made to exceed the benefits they receive from the improvement."

And at page 181, the court cited with approval the case of Norris v Montezuma Valley Irr. District, supra.

Counsel have quoted from Cooley on Taxation on the subject of back taxes or omitted taxes. It seems to me that subject is entirely irrelevant. This is not a case to require the collection of back taxes

or omitted taxes. No property has been omitted. It is a case to require the Budget Commission to approve a mandatory levy.

Notice should be taken of the cases of Wayne County Sav. Bk. v Supervisors, 56 NW (Mich.) 944; People ex v Chicago & N. W. R. R., 152 NE (Ill.) 575; and Gates v Sweitzer, 179 NE (Ill.) 837.

The opinion in Wayne County Sav. Bk. v Supervisors is contained in a single sentence. It appears that on November 16th, 1892, a mandamus was granted requiring an assessment. Prior to November 15th, 1893, the relator sought another writ to require a new assessment for uncollected portion and another assessment to pay bonds that had matured after the first writ had been issued. The court granted the second writ as to the assessment to pay the recently matured bonds, but denied it as to the bonds covered by the first writ. It would seem that the court was generous in its use of the writ at the instance of this relator.

In People ex v Chicago & N. W. R. R., supra, the question really was how much could be levied for "loss and cost" under the Illinois statute. In other words, how much could be included in what we call a contingent fund. It was a question of what the rate should be in order to raise the amount required. The court held that there should be a levy that would, (if all paid and there was no cost) produce more than the required assessment, because experience shows that some will not pay and there will be some cost, but that the taxing officials in fixing the levy could not make it so high as to indicate that the officials would not perform their duty to exercise reasonable diligence in collecting. While the action was to collect delinquent taxes and delinquencies were referred to, the levy was not for the purpose of making good any such delinquencies. They were mentioned in determining what the levy should be to produce the amount required during the current year, to discharge the obligations of that year.

The case of Gates v Sweitzer, supra, does involve a levy necessitated by delinquencies in prior years. The levy was to pay bonds and interest and was a mandatory levy, the Illinois law on that subject being almost identical with that of the Ohio law. The action was by taxpayers to enjoin the levy. The court dismissed the bill. The court at page 841 said:

"It has been generally held under Constitutions requiring uniformity of taxation, that such provisions are not violated when, after the lapse of reasonable time and after reasonable efforts have been made to collect the first levy, an additional levy is made upon all the property in the district because of the failure of some of the taxpayers to pay their portions of the first levy. Wayne County Savings Bank v Supervisors, 97 Mich. 630, 56 NW 944; State v Common Council, 15 Wis. 30; State v Holt County Court, 135 Mo. 533, 37 SW 521; Francis v Atchison, Topeka & Santa Fe Railway Co., 19 Kan. 303. These holdings are based on constitutional provisions similar to ours, requiring the levy and collection of the amount of money necessary to meet interest and principal bond payments. While, of course, the tax officials are required to use diligence to bring about the collection of the tax, and, as held in People v Chicago & Northwestern Railroad Co., supra, they will not be allowed to supply such want of diligence by a further levy of taxes, there is in this bill no charge of want of diligence in attempts to recover the full levy for interest on and due installments of bonds. It is also generally held that such constitutional requirement is not satisfied merely by the levy of a rate sufficient to pay the debt if the taxes be collected, but it requires that there be a sufficient levy and collection of taxes to actually pay and discharge the debt. * * *

"It is a familiar rule that courts of equity, in the absence of a showing of abuse of the discretion vested in taxing authorities, will decline to interfere with the processes of levy and collection of taxes which are committed to those authorities. People v Hassler, 262 Ill. 133, 104 NE 177. Taxes are presumed to be just, and the burden rests upon the objector or one assailing the tax to show its invalidity."

This was the same court that decided People ex v Chicago & N. W. R. R., supra.

Much has been said concerning this subject, which, in the absence of any averment in the pleadings on the subject, is irrelevant, but a discussion was deemed necessary in view of the arguments made.

For these reasons, it is my opinion that the relator should be awarded the writ.